## OLD COLONY TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 2670.

Circuit Court of Appeals, First Circuit.
May 31, 1932.

Herbert P. Mason (of Chamberlin, Stone & Bosson), of Boston, Mass., for petitioners.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Norman D. Keller, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, and C. R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for Commissioner.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

WILSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals, and involves the income taxes of Charles J. Shugrue, now deceased, for the calendar year of 1923.

The decedent was the principal stockholder in the Crown Shade & Screen Company, a Massachusetts corporation engaged in the manufacture and sale of window shades and screens. The capital stock of the corporation outstanding prior to 1923 was only $9,700, divided into 97 shares of the par value of $100, and was held by the officers of the company, four in number, Mr. Shugrue holding 75 shares.

The policy of the company, which was very prosperous, had been to distribute its earnings as salaries, instead of declaring dividends on its capital stock.

On January 1, 1923, the balance sheet of the corporation showed that a total sum of $49,704.58 had been previously voted to Mr. Shugrue as salary, which had not been drawn by him. In order that its books might present a better financial showing, there were issued to him on April 16, 1923, 500 shares of 6 per cent. preferred stock of the corporation, of the par value of $100 each, and the corporation indebtedness to him for back salary was cancelled. The preferred stock was subject to redemption at par on any dividend date, and one-half of it was redeemed at par during the year 1927. The decedent's income tax returns were made on a cash receipt and disbursement basis.

The Commissioner of Internal Revenue included in the decedent's taxable income for the years 1923 and 1924 certain amounts voted to him as salary for those years, but not drawn by him. The Board decided that these sums not being actually received by him were not taxable. No appeal was taken from this decision.

At the hearing before the Board, the Commissioner moved to increase the deficiency tax of Mr. Shugrue for 1923 by including in his income for the year the par value of the preferred stock issued to him in payment of the sum voted to him as salary for previous years. The Board granted the motion. It is this part of the Board's decision that the petitioner seeks to review.

■ The petitioner contends that the stock thus issued to Mr. Shugrue was an exchange of property, and under section 202 (e) of the Revenue Act of 1921 (42 Stat. 230), it having no "readily realizable market value," was not taxable; while the government contends that the provisions of section 213 govern, which provide that gross income (a) "includes gains, profits, and income derived from salaries, wages, or compensation for personal service ⁀ ⁀ * of whatever kind and in whatever form paid."

We think the Board was right in holding that section 202 (e) did not apply to this transaction. It was not an exchange of property within the meaning of section 202 (e), but the payment of a debt, the discharge of an obligation. A reading of section 202 of the Acts of 1918, 1921 (40 Stat. 1060, 42 Stat. 229), and 1924 (26 USCA § 933 and note), clearly discloses that the intent of Congress by these sections was to provide a method of determining gains or losses resulting from the disposition of property, whether by sale or exchange. If an exchange, the rule laid down applied to both parties, as both parties receive property in case of an exchange. In the 1918 act, Congress established as a measure of the gain or loss the fair market value of the property received over the cost, or fair market value in 1913, of the property parted with in the exchange. In 1921 Congress adopted the "readily realizable market" value of the property received in exchange as a basis for computing the gain or loss, if any, but abandoned this standard in 1924 (26 USCA § 933) for the "fair market value" standard of the 1918 act.

While there are two parties receiving property in case of an exchange, a debtor whose obligation is canceled receives no property to which section 202 (e) of the Act of 1921 can be applied. The chose in action of the creditor is discharged and no longer exists.

■ Section 213 of the Act of 1921 included in the gross income all "income derived from salaries, wages, or compensation for personal service ⁀ ⁀ * of whatever kind and in whatever form paid." This section clearly applies to cases like the present, where a salary or compensation for services is paid in stock of a corporation or any other form of property.

■ The Treasury Department in applying section 213 of the Revenue Acts adopted the following regulation: Article 33, Regulations 62. *"Compensations paid other than in cash.*—Where services are paid for with something other than money, the fair market value, if readily realizable, of the thing taken in payment is the amount to be included as income. If the services were rendered at a stipulated price, in the absence of evidence to the contrary such price will be presumed to be the fair value of the compensation received. Compensation paid an employee of a corporation in its stock is to be treated as if the corporation sold the stock for its market value and paid the employee in cash."

Stress is laid by the petitioners on the first sentence of this article in support of their contention that, unless the property received in payment of services has a readily realizable market value, there is no taxable income; but we think this article must be read as a whole, and taken together presents a method for determining the amount of income where services are paid for in other than in money.

If the fair market value of the property received can be readily ascertained, that may be taken as the amount to be included in the gross income; if not, and the services were rendered at a stipulated price, in the absence of evidence to the contrary, such price will be presumed to be the fair value of the compensation received; and, in case a corporation pays an employee for services in stock, it is to be treated as if the corporation sold the stock for its market value and paid employee in cash.

Where the fair market value of property received in compensation of services is not readily realizable, as where there have been no sales under conditions that can be held to determine its fair market value, Chicago Ry. Equipment Co. v. Blair (C. C. A.) 20 F.(2d) 10, 13, 14, then the Board may take into consideration in determining the income the other measures fixed in article 33: (1) The stipulated price at which the services were rendered; or (2) in the case of the payment by a corporation in its own stock, the fair market value of that stock, that is, what one under no compulsion to sell can obtain in a reasonable time from a person willing, desirous, and able to buy.

■■ The rule is well settled that, if there is any substantial evidence to support the findings of the Board of Tax Appeals, it must stand. The Board found the fair market value of the stock issued to Mr. Shugrue to be $50,000. We think there was evidence to support the finding. Its weight was a question of fact for the Board to determine. The stipulated price of the services in this case was $49,704.58. The earnings of the company for several years prior to 1923 and during the following year were very large in proportion to the amount of its capital stock.

■ On January 1, 1923, there was accrued salary due the decedent of $49,704.58, and, after the issuing of the 500 shares of preferred stock in payment of the above amount, there accrued to him by vote of the corporation from profits of the corporation during the year 1923 the sum of $39,914.92, and in 1924 an additional sum of $34,835.08, so that on January 1, 1925, there was due the decedent as compensation for services during the years 1923 and 1924 the additional sum of $69,750. The preferred stock of a corporation that could earn such returns on a limited capital must have had a market value, if the stock had been offered by the corporation, or Mr. Shugrue, for sale. It is not essential that there be a sale to determine the fair market value of the stock of a corporation. The nature of its business, and the other elements that go to make up the value of the stock to a purchaser who is willing and desirous of buying, may be considered. It is a question of the sound judgment of the Board of Tax appeals. Wright v. Commissioner (C. C. A.) 50 F.(2d) 727, 729. It is not essential that a particular buyer be known in order to establish a fair market value. Chicago Ry. Equipment Co. v. Blair, supra.

While there appears to be a lack of harmony in the prior decisions of the Board as to the rule to be applied in such cases, we think the fair market value could be properly applied in this case.

■ Taking into consideration the fact that the value of the services for which the stock was issued was determined by the corporation to be $49,704.58, and that the corporation in the three preceding years prior to 1923 had earned more than six hundred times the par value of its capital stock outstanding, and after paying the dividend on the preferred stock had a surplus from earnings in 1923 of approximately 75 per cent. of the par value of both the common stock and preferred stock, and nearly an equal amount in 1924, it cannot be said, we think, there was no substantial evidence to support the finding of the Board that a fair market value of the preferred stock issued to the decedent in 1923 was $50,000. The company not only paid dividends on this stock for four years thereafter, but in 1927 half of the preferred stock issued to Mr. Shugrue was redeemed by the corporation at par. While the redemption four years later at par may be too remote on which alone to determine its fair market value in 1923, taken in connection with the history of the company and its earnings in 1921, 1922, 1923, and 1924, we think there was sufficient evidence on which the finding of the Board can rest.

The decision of the Board of Tax Appeals is affirmed.