THE SUGAR CREEK COAL AND MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73758.   Promulgated October 16, 1934.

*Evert L. Bono, Esq.*, for the petitioner.

*Arthur H. Fast, Esq.*, and *Harold D. Thomas, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The respondent determined a deficiency of $67,535.47 in petitioner's income tax for the fiscal year ended May 31, 1931, in part by including in income the aggregate amount of advanced royalties received in former years from a lessee obligated to pay an annual minimum mining royalty. By virtue of the cancellation, in July 1930, of the lessee's right to apply such former advanced payments against future extractions of coal in excess of the minimum, respondent included all prior advances in 1931 income, on the ground that petitioner's failure to report them when received now estops it to deny that they constitute income in the year of cancellation. The

Division opinion promulgated April 18, 1934, 30 B. T. A. 420, was directed by the Chairman to be reviewed by the Board.

The facts are all stipulated.

Petitioner has, since 1904, been the owner of coal lands in Ohio which were under mining leases obligating the lessee to pay minimum annual royalties. The lessee, however, had the right to have the royalties paid by it in excess of actual tonnage applied cumulatively to any subsequent excess tonnage mined. The lessee never mined above the prescribed minimum except in 1917, 1918, 1920, and 1921. The minimum royalties paid above the tonnage mined from 1904 to the end of the fiscal year 1927 aggregated $563,319.25, after applying the proper deductions for excess tonnage of 1917, 1918, 1920, and 1921. Of the accumulated excess royalties of $563,319.25, the amount of $241,112.97 covered the period from March 1, 1913, to May 31, 1927. No coal was mined or payments made during the fiscal years 1928, 1929, and 1930.

On its books, petitioner accounted for the royalties received each year by debiting cash for the full amount and crediting profit and loss with so much as was attributable to tonnage mined and crediting advanced royalty with the excess.

By a new agreement of July 14, 1930, the terms of the lease were changed and the accumulated royalty of $563,319.25 was " cancelled and released." On petitioner's books, the " advanced royalty " was charged off by a debit of $563,319.25 and a credit to " distributed reserves ", a surplus account.

On its tax returns, beginning with 1909, petitioner annually reported only so much of the amounts received as were allocable to tonnage mined, and omitted the excess of minimum royalties. Its depletion deductions were measured by the tonnage mined. In July 1931 it filed an amended return for 1927, reporting total royalties received in that year and deducting depletion measured by the minimum tonnage, and paid the additional tax. At that time the statute of limitations barred assessment or collection of taxes for the years prior to 1927.

It is agreed that revenue agents made examinations of petitioner's books for the fiscal years 1922 to 1927, inclusive, and made reports. Whether examinations were made for other years does not appear. The respondent determined a deficiency for 1931 by including in petitioner's income the aforesaid $563,319.25, and said in the notice of deficiency dated August 5, 1933, " The latter amount has been added to net income in accordance with the doctrine of quasi estoppel, the principles of which do not permit a party to act in a manner inconsistent with its former position to the injury of another. The collection of taxes on all years prior to the year ended May 31, 1931.

are now barred by the statute of limitations and you cannot now be permitted to change to the received basis without injury to the Government."

An amended answer filed at the hearing contains the following:

Further answering, respondent alleges:

*       *       *       *       *       *       *

(6) That in its return of annual net income filed with the Collector of Internal Revenue for all years prior to the taxable year, petitioner did not report as income any portion of the advanced royalties in question; and that by reason of such action and representations thereby made, petitioner is precluded and estopped from claiming that the amount of advanced royalties is not taxable in the taxable year involved in this appeal.

At the hearing it was stated for respondent that the doctrine of estoppel alone was his defense; that the amounts should properly have been reported each year when received, but that, since the taxpayer failed to report them and for some reason the Commissioner failed to notice the omission, the taxpayer is estopped to deny the propriety of their inclusion in taxable income when the account was canceled and when it was too late, under the statute of limitations, to tax them in the years when they constituted income and should properly have been taxed; that the amounts received prior to 1913 were not taxable prior to 1909, and probably not taxable prior to March 1, 1913, and therefore such part of the $563,319.25 as came in prior to March 1, 1913, was admitted to be not within taxable income and the deficiency should be *pro tanto* reduced; that a further reduction should be made because of the amended return and payment for 1927, thus leaving only the amount of $217,353.33, covering the period from March 1, 1913, through 1926, in issue; that the method of bookkeeping, whether accrual or actual receipts, makes no difference; and that the Government does not claim that the returns for earlier years were fraudulent, but only that the advanced royalty items were mistakenly omitted.

Estoppel is not an element of income but only a doctrine affecting liability. It cuts across substantive principles in order to promote an assumed fairness thought to be more important than an adherence to conventional legal considerations. It does not create a right but only affects remedy. The burden is upon the party asserting it to establish both the facts relied on to support it and the necessity in fairness for its application. *Helvering* v. *Brooklyn City R. R. Co.*, 72 Fed. (2d) 275. This the Commissioner has assumed and undertaken. His affirmative proposition may be abstractly stated thus: A taxpayer who, for a long period of years beginning prior to 1913, annually receives taxable income and erroneously (but not fraudulently) omits it from his

return and is not required by the Commissioner to pay tax thereon, although official examinations have for a number of years informed the Commissioner of the facts before the expiration of the statutory period of limitations, is estopped to deny liability for tax on the aggregate amount of such income in a single subsequent year, when such income is neither received nor accrued, because the statute of limitations bars the tax for the earlier years when it was properly due.

This proposition would operate as a complete frustration of the statute of limitations. Congress having expressly provided such a bar, the Commissioner would thrust it aside whenever it seemed to him or to the Board or the courts unfair, although there is in the act neither express nor implied exception of such a nature. This is also true of refunds of overpayments, for the Commissioner may not act merely upon his sense of fairness to allow a claim long after it is outlawed by statutory limitation. In the absence of fraud or at least of conscious deception, Congress has fixed a period of time as a limit upon collectibility, and this may not give way to an elusive concept of fairness.

There may be a tinge of unfairness in the thought that a taxpayer may, because of the statutory limitation, avoid a tax otherwise unquestionably due. But, on the other hand, it may be unfair that an honest taxpayer should be made to answer for an innocent mistake long afterward. These matters Congress has considered and in its legislative wisdom it has enacted the limitation period at the price of losing the tax. The administrative officer may not interpose his judgment to the contrary, *Dupree* v. *Mansur*, 214 U. S. 161.

But, if the question of the essential unfairness of this petitioner's position be open to consideration, there is still not enough to support the respondent's affirmative plea. The petitioner has not misled the respondent. So far as the evidence shows, petitioner has merely filed erroneous returns in which the Commissioner has acquiesced. There is no explanation of the error by either side. Both have known all the facts, certainly since 1922, and we may assume, in the absence of contrary evidence at least, that the Commissioner before that did his official duty and likewise ascertained them. Cf. *Helvering* v. *Brooklyn City R. R. Co.*, *supra.* Perhaps throughout the entire period both the taxpayer and the Government held a mistaken view of the legal theory or proper time for taxing the royalties. There is nothing to indicate that the contract was not known to both or that petitioner's books omitted any facts. Neither an affirmative misstatement nor a concealment is suggested, nor an

act of the Commissioner in reliance on petitioner's word or conduct. A mutual mistake of law is no foundation for estoppel. *Tide Water Oil Co.*, 29 B. T. A. 1208. If it were, there would be just as much ground for the taxpayer to claim that the Government is estopped to change its position.

That there is no substantive reason to tax these advanced royalties in 1930 is impliedly conceded in the agreement that they were taxable when received. *C. H. Mead Coal Co.*, 31 B. T. A. 190. In 1930 the petitioner derived no part of this amount. The lessee neither had nor claimed any right to it after payment. Its right to extract coal to the extent of the royalties paid did not affect the lessor's ownership of the royalties. Hence, by no theory could a tax be imposed in 1930. As to, say, the 1914 royalties, there is no more reason to tax them in 1930 than in 1923. If estoppel alone is the ground, it was as well founded in 1923 as in 1934. And if there is no basis for tax in the 1930 contract or charge-off, then estoppel would be equally operative to impose a cumulative tax in 1950 as in 1930. If this principle is sound, an individual taxpayer who failed to pay tax at the low rate of 1914 would be subject to the high brackets of 1930 upon the accumulation of royalties for all the intervening years. This would be a serious penalty upon one admittedly free from fraud.

We therefore see nothing to support the claimed estoppel. As a general proposition, estoppel does not support a belated assessment merely because the taxpayer has omitted the income from his earlier returns and the statute of limitations has barred the correct assessment.

There are prior decisions involving the doctrine of estoppel, but we find no clear authority to support the respondent's contention. Cases where the taxpayer has knowingly postponed the tax by an affirmative act or statement upon which the Commissioner reasonably relied do not support the broad rule urged upon us here.[1] And the doctrine of estoppel is not to be confused with that of election.[2]

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ADAMS concurs in the result.

SMITH dissents.

[1] *Askin & Marine Co.* v. *Commissioner*, 66 Fed. (2d) 776 (C. C. A., 2d Cir.) ; *Mattern* v. *Commissioner*, 61 Fed. (2d) 663 (C. C. A., 9th Cir.) ; *Haag* v. *Commissioner*, 59 Fed. (2d) 516 (C. C. A., 7th Cir.) ; *Lucas* v. *Hunt*, 45 Fed. (2d) 781 (C. C. A., 5th Cir.) ; *Burnet* v. *San Joaquin Fruit & Investment Co.*, 52 Fed. (2d) 123 (C. C. A., 9th Cir.) ; *Rockwood* v. *United States*, 38 Fed. (2d) 707 (Ct. Cls.) ; *McDonald Coal Co.* v. *Heiner*, 9 Fed. (2d) 292 ; 16 Fed. (2d) 274 (C. C. A., 3d Cir.) ; *Swartz* v. *Commissioner*, 69 Fed. (2d) 633 (C. C. A., 5th Cir.).

[2] Cf. *Buttolph* v. *Commissioner*, 29 Fed. (2d) 695 (C. C. A., 7th Cir.) ; *Radiant Glass Co.* v. *Burnet*, 54 Fed. (2d) 718 (C. A., D. C.) ; *Moran* v. *Commissioner*, 67 Fed. (2d) 601 (C. C. A., 1st Cir.) ; *Crane* v. *Commissioner*, 68 Fed. (2d) 640 (C. C. A., 1st Cir.).