## COMMISSIONER OF INTERNAL REVENUE v. FARREN.*

### SAME v. McCRARY.

### Nos. 1265, 1266.

Circuit Court of Appeals, Tenth Circuit.

Jan. 28, 1936.

Rehearing Denied March 9, 1936.

S. E. Blackham, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

J. H. Maxey, of Tulsa, Okl. (N. A. Gibson and Wilbur J. Holleman, both of Tulsa, Okl., and Chas. H. Garnett, of Oklahoma City, Okl., on the brief), for respondents.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

In 1918 the taxpayers each received 10,-000 shares of stock in the Guffey-Gillespie Oil Company, of an actual value of $9.42 per share, as compensation for services rendered. Although taxable as income for that year[1] no return thereof was made because the taxpayers honestly believed that no return was necessary until the stock was sold. In 1926 Farren sold his shares for $100,770.81, and McCrary sold 9000 shares for $91,000. Each reported the sale on his income tax return for 1926, but claimed the prices received were less than the value of the stocks when acquired. The Commissioner found the acquisition value to be $6.-11 a share and assessed a deficiency. The taxpayers petitioned the Board of Tax Appeals to redetermine the deficiency alleging the fair market value of the stocks when acquired exceeded the sale price. By amended answers, the Commissioner prayed that the assessments be increased, alleging that the stocks were acquired in 1918 as compensation for services rendered; that on their 1918 returns the taxpayers "treated the stock as having no fair market value and did not include any amount in his taxable income for 1918, as the result thereof. Said return was acquiesced in and accepted by the respondent without change and the

---

[1] Bothwell v. Commissioner (C.C.A. 10) 77 F.(2d) 35; Olson v. Commissioner (C.C.A.7) 67 F.(2d) 726; Crowell v. Commissioner (C.C.A.6) 62 F.(2d) 51; Old Colony Trust Co. v. Commissioner (C.C.A.1) 59 F.(2d) 168; Tr.Reg. 45, Art. 33.

*Writ of certiorari granted 56 S.Ct. 953, 80 L.Ed. ——.

taxpayer thereby derived a material benefit and advantage with respect to his income tax liability for the year 1918.

"Wherefore, the premises considered, the respondent prays that by reason of the action of the taxpayer, and the benefits and advantages derived by him as a result thereof, the petitioner is estopped to deny that the stock of the Tidewater Osage Oil Company had no fair market value when received in 1918, and under the circumstances the petitioner is not entitled to reduce the proceeds of the sale by any amount as representing the fair market value of the stock when received."

To which replies were filed admitting the stocks were received in 1918 as compensation for services and that such incomes were not returned in 1918 because the taxpayers misinterpreted the law, they innocently believing no tax was due until the stocks were sold.

The statute of limitations had barred assessments on 1918 income when the 1926 returns were filed. These facts were stipulated on the trial. The controversy was narrowed to the one question, whether the taxpayers were entitled to "the deduction from the sale price of said stock in 1926 of its above stipulated value in 1918, taken as cost, in determining the gain on said sale." The Board, relying upon its decision in Sugar Creek Coal & Mining Company v. Commissioner, 31 B.T.A. 344, held the taxpayers were entitled to deduct the actual value of the stocks in 1918, in lieu of cost. The Commissioner appeals.

Section 204(a), Revenue Act of 1926, 44 Stat. 14, provides that in arriving at capital gain, the basis shall be the cost of property if acquired after February 28, 1913. The taxpayers do not use cost as a basis, for the petitions allege that "There was no agreed price or value fixed upon such services and property. The fair market value of the stock when acquired represents the cost thereof to petitioner." The stipulation of facts is silent as to cost, but stipulates the actual value in 1918. Reg. 69, Art. 31, provides:

"Where property is sold by a corporation to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, such shareholder of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its cost shall be deemed to be its fair market value at the date of acquisition by the shareholder or the employee." [2]

If the taxpayers are permitted to deduct the stipulated actual value in 1918 instead of the "cost" provided by statute, it must be because this regulation so authorizes. But in a case almost identical on its facts, the Eighth Circuit Court of Appeals held that a taxpayer who had not complied with the first sentence of the regulation could not take advantage of its last sentence. In a well-reasoned opinion, Judge Booth said:

"Treasury Decision 3435 (afterward incorporated into the Regulations) was intended to introduce and did introduce a new practice. By that ruling, an employee who was allowed by his company to purchase stock in the company at a price less than the fair market value thereof was required to include in his gross income for the year in which the stock was received the difference between the actual cost to him of the stock and its fair market value. This was not all. As owner of the stock he was obliged to state in his income tax report, if and when he sold the stock, the gain or loss, the same as any other owner. But since he had already reported as income at the time he acquired the stock the difference between the actual cost to him of the stock and its fair market value, he was allowed in reporting the sale to assume that the cost to him was the same as the fair market value, thus avoiding the possibility of a double taxation.

"The last sentence in Treasury Decision 3435 must be read in connection with what precedes. The provision of the last sentence applies only to the class of persons mentioned in the first sentence. It is an adjustment provision. The taxpayers in the case at bar were not and could not be in such class of persons, and therefore the last

---

[2] The validity of this regulation, as applied to a bona fide purchase of property by a stockholder or employee, has been questioned. Commissioner v. Van Vorst (C.C.A.9) 59 F.(2d) 677; Paul & Mertens Income Taxation, vol. 1, p. 180. But where services are paid for in stock, as here, the regulation but states the law as decided by the courts and in Tr.Reg. 45, Art. 33; and the last sentence when applied to such a situation does no more than prevent an unfair double taxation and is valid. See, Salvage v. Commissioner (C.C.A.2) 76 F.(2d) 112.

sentence has no application to them." Larkin v. United States (C.C.A.) 78 F.(2d) 951, 953, 954.

We do not consider the decision in Sugar Creek Coal & Mining Company v. Commissioner, 31 B.T.A. 344, relied upon by the Board, as opposed. There the Commissioner simply assessed income in a year in which it was neither received nor accrued for the sole reason that the statute had barred its assessment in the year in which it should have been returned. If the Commissioner can do that, the statutes of limitation are meaningless. But here the taxpayers in 1926 received large sums from the sale of stocks; the gain must be determined; the "cost" criterion of the statute will not serve them, for they paid nothing. They must substitute the "actual value" stipulated for "cost." The regulations authorize such substitution where stock has been received as compensation for services, to those who have returned that value (or the difference between cost and value when received) as income. The taxpayers not having done that, are not entitled to rely upon that part of the regulation which undertakes to avoid double taxation to those who comply with it.

Petitioner also urges that the taxpayers having, however innocently, failed to return the stock as income in 1918 when received, may not for the purpose of reducing their 1926 taxes, rely upon a fact which they innocently concealed in 1918, after the statute has run on 1918 taxes. The Commissioner pleads that since the taxpayers treated the stocks in 1918 as having no market value, they ought not now to be permitted to ascribe a value to them. Petitioner's position is supported by our decision in Bothwell v. Commissioner, 77 F.(2d) 35, in two decisions of the Eighth Circuit Court of Appeals, Larkin v. United States, supra, and Fordyce v. Helvering, 78 F.(2d) 525, of the First Circuit in Crane v. Commissioner, 68 F.(2d) 640, and by language used by the Court of Claims in Raleigh v. United States, 5 F.Supp. 622. In Stearns Co. v. United States, 291 U.S. 54, 61, 54 S. Ct. 325, 328, 78 L.Ed. 647, an over-assessment for 1918 was credited upon a deficiency for 1917, the taxpayer accepting the credit without protest. After the statute had barred collection of the 1917 taxes, the taxpayer sued to recover the 1918 over-assessment contending the credit on the 1917 tax was wrongful. The Supreme Court denied recovery based, as it was, upon a shift of position after the statute had run, Mr. Justice Cardozo saying, in part:

"The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect: "This is your own act, and therefore you are not damnified."' * * * Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. * * * A suit may not be built on an omission induced by him who sues."

The taxpayers here rely upon Salvage v. Commissioner (C.C.A. 2) 76 F.(2d) 112, affirmed Helvering v. Salvage, 56 S.Ct. 375, 377, 80 L.Ed. —, Jamieson v. United States (D.C.Mass.) 10 F.Supp. 321, and Robinson v. Commissioner (C.C.A.6) 59 F. (2d) 1008, in which the question lurked but went unnoticed. In the Salvage Case, stock was issued in consideration of a covenant not to compete and a dwindling option to re-sell five-sevenths at the sale price. Estoppel was not pleaded. The Court of Appeals held the taxpayer was not estopped to set up the actual value of the two-sevenths not subject to the option as a basis for determining gain and disapproved the majority opinion in the Crane Case. The Supreme Court affirmed, holding that since estoppel was not pleaded, the Court of Appeals "should have passed the point." Notwithstanding this admonition to the Court of Appeals the Supreme Court said "Furthermore, the facts disclosed give it no support." Since the question presented here on the record was not before either the Board or the courts, and since the decision of the Supreme Court in the Stearns Case, and the decisions of the Eighth, Tenth and First Circuits and the Court of Claims, above cited, were not mentioned, it does not seem that the conflict, if there be one, is resolved. In any event, it is not for an inferior court to depart from the principle laid down in the Stearns Case, and which this Circuit and other courts have held applicable to situations such as we have here.

If we err in failing to ascribe proper significance to the quoted sentence in the

Salvage Case, we nevertheless are confronted with the logic of Judge Booth's opinion in the Larkin Case, which to us seems unassailable. The statute prescribes "cost" as the base for determining gain on a sale. The record here is silent as to cost; hence the taxpayers did not overcome the presumption that the Commissioner correctly computed the gain. Lucas, Commissioner, v. Kansas City Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74·L.Ed. 848. The record does show the 1918 value of the stocks. The regulation permits actual value to be substituted for cost where property has been acquired for less than cost as compensation for services where the difference was returned for taxes. The difference not having been here returned, the taxpayers should not be permitted to avail themselves of that regulation.

Such conclusion prevents taxpayers from turning to their own profit their misinterpretation of the revenue laws. If rates of taxation remain the same, the result is the same; if the rates increase, the taxpayer suffers from his lack of knowledge of the law; if they go down, he profits. The Commissioner does not thereby circumvent the statute of limitations; the taxpayer, when the property is sold, must establish a base for determining the gain. If the properties cost him nothing, the gain is measured by the price. If the taxpayer desires to substitute value for cost, he must bring himself within the regulation permitting such substitution.

The decision of the Board of Tax Appeals is reversed and the cause remanded for a re-computation of the tax.

### On Petition for Rehearing.

Counsel press upon us the fact that Tr. Dec. 3435, afterward Reg. 69, Art. 31, was not promulgated until 1923, and could not affect compensation received in 1918. The effective date of the regulation did not escape our notice; that it should be stressed in this petition indicates a misconception of our opinion. Even though we be in error, counsel are entitled to a clear statement of our views.

In 1918, when the stock was received as compensation, it should have been returned as income. Tr.Reg. 45, Art. 33. It was not. The statute has run for that year, and neither the Commissioner, the Board, nor the courts may ignore the limitation statute.

In 1926, the stock was sold. What was the gain to be returned as income in 1926? Section 204 (a), Revenue Act 1926, 44 Stat. 14, provides that it is the difference between the sale price and cost. What did it cost? The record does not show. It simply shows that it was received as compensation for services. What the services were, or their value, is not disclosed; and if it were, it would seem to make no difference.

The taxpayers seek to substitute the "fair value" of the stock in 1918 for the criterion of "cost" supplied by the statute; the record discloses the 1918 value of the stock and not its cost. We find no warrant for that substitution in Reg. 69, Art. 31, because the taxpayers, not having brought themselves within its terms, cannot rely upon it. If it has no application to the case because not in force in 1918, as now urged, it is another reason why it affords no support for substituting "value" for "cost."

Nor can we find any other warrant for such substitution. On the contrary, Larkin v. United States (C.C.A.8) 78 F.(2d) 951, on facts not distinguishable, holds that a taxpayer who has failed to return for taxes stock received for services, may not, when the stock is sold, avail himself of the privilege accorded by the regulation to those who have made a proper return. We are in accord with that opinion, and do not find that it has been reversed or discredited by the Supreme Court.

The petition for rehearing is denied.