ROBERTA H. GORMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THOMAS L. GORMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gorman v. Commissioner
Docket Nos. 30119-81, 30120-81.
United States Tax Court
T.C. Memo 1986-344; 1986 Tax Ct. Memo LEXIS 268; 52 T.C.M. (CCH) 26; T.C.M. (RIA) 86344; August 4, 1986. Roberta H. Gorman and Thomas L. Gorman, *272 pro se. Scott Anderson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: In these consolidated cases respondent determined in a joint notice of deficiency dated September 16, 1981, deficiencies in, and additions to, petitioners' Federal income taxes, as follows: [1] Sec. 6653(a) Year
Deficiency
Addition to tax
1977
$80,319.44
$4,015.97
1978
82,925.68
4,146.28
Petitioners filed separate petitions with respect to the deficiencies and additions to tax. After numerous concessions, the following issues remain for decision: (1) Whether petitioners are entitled to deductions for Schedule C expenses for (a) magazine subscriptions, (b) country club dues, (c) telephone, and (d) travel and education. (2) Whether petitioners Thomas L. Gorman (hereinafter individually referred to as "petitioner") and Roberta H. Gorman (hereinafter "Mrs. Gorman") are entitled to deduct any loss in 1977 and 1978 with respect to their interest in Assured Equity Programs, *273 Inc., and, if so, whether the loss incurred in 1977 may be properly characterized as an ordinary loss pursuant to section 1244. (3) Whether petitioners are entitled to deduct as a partnership loss on their 1977 Federal income tax return any amount in excess of the $2,585.51 allowed by respondent with respect to petitioner's partnership interest in Alpha Oil Company. (4) Whether petitioners are entitled to deduct amounts pursuant to section 165 or section 212 with respect to The Oxford Investment Mangement Corporation. (5) Whether Mrs. Gorman is entitled to relief from liability under section 6013(e) for any erroneous deductions claimed by petitioners on their 1977 and 1978 Federal income tax returns. (6) Whether any portion of the underpayment of tax with respect to petitioners' 1977 and 1978 Federal income tax returns was due to negligence or intentional disregard of the rules and regulations. Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Richmond, Virginia, at the time their petitions were filed in these cases. They filed a joint income tax *274 return for each of the years at issue. Issue 1. Schedule C Expenses
a. Magazine Subscriptions
FINDINGS OF FACT Petitioners claimed $1,914.42 as deductible expenses for "dues and subscriptions" on their 1977 Schedule C, and $2,315.97 for "dues and publications" on their 1978 Schedule C. They claimed as expenses amounts paid to Liberty Lobby, The Mayans, Mosely-Flint, AMORC Funds, Costa Rica Letter, Security Management Associates, Executive Program, National Promotions, Inc., Forcaster, Turfwin Publications, The Spotlight, Investors Book Club, Book Digest Magazine, Target Publishers, Conservative Book Club, Morgan Council, Institute of Certified Business Counselors, and International Entrepreneurs Association. Most of the subscriptions and publications purchased by petitioners during the taxable years in issue appear to pertain to the field of investment. However, no investment income was reflected on the Schedules C for petitioner's medical practice or anywhere else on petitioners' 1977 or 1978 tax returns. Respondent disallowed the deductions for these items in amounts totaling $854.41 and $1,058.10 for 1977 and 1978, respectively. OPINION According to respondent, *275 petitioners have not established the necessary relationship between the amounts paid for these publications and subscriptions and petitioner's trade or business. Respondent's determination is presumptively correct and petitioners have the burden of proving that it is erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a).[2]
Section 162 allows a taxpayer a deduction for ordinary and necessary business expenses paid or incurred during the taxable year. Section 1.162-6, Income Tax Regs., provides that a taxpayer "may claim as deductions the cost of supplies used by him in the practice of his profession * * * dues to professional societies and subscriptions to professional journals * * *." See Kasey v. Commissioner,54 T.C. 1642, 1650 (1970), affd. 457 F.2d 369 (9th Cir. 1972). Petitioner, however, failed to provide evidence to document his assertion that these expenses were related to his *276 trade or business. Mrs. Gorman testified that her husband was interested in sales, investments, business, religion, and philosophy, and that, in a general way, the religious and spiritual materials assisted petitioner in the treatment of his patients. The only substantiation for these expenses consists of petitioners' canceled checks. Without evidence to document the specific connection between each subscription or publication and petitioner's trade or business, we must sustain respondent's determination on this issue. Rule 142(a). Welch v. Helvering,supra.
b. Country Club Dues
FINDINGS OF FACT On the Schedules C attached to the 1977 and 1978 income tax returns, petitioner claimed as deductible expenses of his medical practice monthly dues paid to the Willow Oaks Country Club in Richmond, Virginia. These dues totaled $476 and $756 in 1977 and 1978 respectively. OPINION Respondent disallowed these deductions because petitioner failed to present evidence to show that his membership in the Willow Oaks Country Club was maintained for business purposes. Furthermore, petitioner failed to satisfy the substantiation requirements of sections 162 and *277 274. In order to be entitled to a deduction with regard to expenses incurred relative to a country club membership, petitioner must establish by adequate records that the club was used in his trade or business and that the club dues were ordinary and necessary business expenses. Section 162. In addition, entertainment expenses, such as those related to a country club membership, must be either directly related to or associated with the active conduct of the taxpayer's trade or business. Section 1.274-2(a)(1), Income Tax Regs.
Petitioner failed to present either testimonial or documentary evidence that his country club was utilized, in whole or in part, for business purposes, and has clearly not met the requirements of sections 162 and 274. Thus, petitioners are not entitled to deduct these costs. c. Telephone
FINDINGS OF FACT On the Schedules C for petitioner's medical practice, petitioners deducted $687.89 and $560.11, for 1977 and 1978 respectively, for expenses relating to a telephone in petitioners' residence listed in the name of "The Gorman *278 Company." The Gorman Company was incorporated in the Commonwealth of Virginia during the years in issue, but no evidence was presented by petitioners as to the type of business, if any, conducted by the company. In addition, petitioners deducted $646.18 and $1,192.49, for 1977 and 1978 respectively, for a second telephone in the Gormans' personal residence which was billed to T. L. Gorman, M.D. These two telephones were the only telephones in petitioners' personal residence. The Gorman Company telephone number is listed in the Richmond telephone directory. Petitioners' children used both of the telephones to make personal calls. The telephone billed to T. L. Gorman, M.D. was used at least in part for business purposes. The amounts paid by petitioners for local service during the years 1977 and 1978 were $195.78 and $225.31, respectively. OPINION Petitioners have failed to provide this Court with evidence that the telephone billed to The Gorman Company was used in any way to business purposes. Therefore, as to the expenses incurred with regard to this telephone, the deduction claimed by petitioners must be denied. Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933). *279 As to the telephone billed to T. L. Gorman, M.D.," petitioners were able to establish at least some business use through Mrs. Gorman's testimony. They were, however, unable to to substantiate the amount of telephone use that related to petitioner's trade or business. Mrs. Gorman's testimony was vague and indicated only that it was necessary to have two telephones in their home so that petitioner's patients could contact him. Respondent concedes that one-eighth of the household expenses incurred by petitioners were associated with the business use of their home. Petitioners are, therefore, entitled to a deduction equal to one-eighth of the total expenses (i.e., $195.78 for 1977 and $225.31 for 1978) attributable to the telephone billed to T. L. Gorman, M.D. We think that this method of apportionment is both fair and proper and a deduction will be allowed only to that extent. d. Travel and Education
FINDINGS OF FACT On the 1977 Schedule C for petitioner's medical practice, petitioners deducted $3,482.08 as a "post graduate education expense." Of that amount, respondent disallowed the following expenses totaling $2,831.49: Amount
Item
$ 702.36
Check paid to "American Express."
1,453.13
Checks paid to "United Airlines and United
Airlines Credit Card statements."
156.00
Bill from and checks paid to "C. O. Alley Travel
Agency."
112.00
Bill from and paid check to "C. O. Alley Travel
Agency."
132.00
Bill from and paid check to "C. O. Alley."
276.00
Bill from and paid check to "C. O. Alley."
2,831.49
Total
*280 On the 1978 Schedule C, $1,840.54 was deducted by petitioners as a "Postgard. Educ." expense. Respondent disallowed the following items totaling $793.24: Amount
Item
$229.24
Checks paid to "United Airlines."
165.00
Bill from and check to "C. O. Alley."
190.00
Checks paid to "University of Maryland."
135.00
Check paid to "Eastern Airlines."
74.00
Bill from Interstate Inn of College Park and
copy of American Express receipt from
Interstate Inn.
$793.24
Total
During the 1977 and 1978 taxable years, petitioner traveled to Chicago, Detroit, Atlanta, Phoenix, and Milwaukee. The claimed deductions pertaining to his travel were disallowed, however, because petitioners failed to provide evidence to demonstrate that there was a business purpose for such travel. Petitioners attended a seminar at the University of Maryland in November 1978 on "How to Succeed in Your Own Part-time or Full-time Business." Respondent denied the deductions relating to this seminar because petitioners offered no evidence to establish a connection between the seminar and petitioners' trade or business. OPINION Although petitioner presented documentary evidence to indicate *281 that, during the calendar years 1977 and 1978, he traveled to Chicago, Detroit, Atlanta, Phoenix, and Milwaukee, he failed to establish that there was any business purpose for this travel. Although Mrs. Gorman testified that she generally believed that her husband's trips were business related, petitioner was unable to prove that the travel related expenditures in question were ordinary and necessary expenses incurred in his trade or business. Section 162; Rule 142(a). In addition, petitioner failed to satisfy the provisions of section 274(d) requiring taxpayers to substantiate by adequate records or by other corroborating testimong (1) the amount of the expenditure; (2) the time and place of the travel; and (3) the business purpose of the expense. In providing substantiation of the business purpose of a travel expense, the taxpayer is required to provide evidence describing the "[b]usiness reason for travel or nature of the business benefit derived or expected to be derived as a result of travel." Section 1.274-5(b)(2)(iv), Income Tax Regs.
Petitioners claim *282 that in November 1978 they attended a seminar at the University of Maryland on "How to Succeed in Your Own Part-time or Full-time Business." Generally, a taxpayer can deduct, as an ordinary and necessary business expense, those costs incurred for education that maintains or improves the skills required by an individual in his employment or business. Section 1.162-5(a)(1), Income Tax Regs. Petitioners have failed, however, to establish that the seminar they attended had any direct or indirect connection to a trade or business engaged in by them during 1978. Therefore, we deny the deductions claimed by petitioners with regard to the seminar at the University of Maryland. Issue 2. Assured Equity Stock Loss
FINDINGS OF FACT In 1972 or 1973, petitioner became involved with a venture known as Assured Equity Programs, Inc., (hereafter "Assured Equity"). During the period when he was associated with Assured Equity, petitioner worked for the enterprise on a full-time basis and conducted his medical practice only on Tuesdays and Saturdays. Assured Equity was in *283 the business of selling insurance and training insurance salesmen. On March 7, 1974, certificates for 66,667 shares of Assured Equity Stock were issued to petitioner. On their 1977 income tax return, petitioners claimed a $50,000 ordinary loss and a $16,667 long-term capital loss with respect to the Assured Equity Stock. [3] Attached to petitioners' 1977 return was a letter from Daniel P. Small stating that petitioner's stock in Assured Equity became worthless in 1977 and that the stock had been issued pursuant to section 1244. Petitioner was issued the Assured Equity stock in lieu of compensation for services that he rendered to the corporation in 1972 and/or 1973. OPINION Respondent contends that petitioners are not entitled to deduct any loss with respect to the Assured Equity stock on their 1977 or 1978 income tax returns. According to respondent, in order to be entitled to deduct a loss with respect to the worthlessness of the Assured Equity stock, petitioner must first *284 provide evidence as to his basis in the stock. Respondent asserts that petitioner has failed to present any evidence with regard to basis. Respondent further argues that even if a deductible loss in fact occurred, the only evidence in the record to establish that the Assured Equity stock was properly characterized as section 1244 stock consists of a letter from one of the principals of Assured Equity. Respondent argues that the letter is not sufficient evidence to entitle petitioners to an ordinary loss pursuant to section 1244. Section 1244(a) provides that a loss of up to $50,000, in the case of a joint return, on stock will be treated as an ofdinary loss if the stock qualifies as "section 1244 stock" as that term is defined in section 1244(c). [4]Section 1244 stock consists of common stock in a domestic corporation meeting the following conditions: (A) The corporation adopted a plan after June 30, 1958 to offer the stock for a period ending no later than 2 years after the date the plan is adopted. Section 1244(c)(1)(A). (B) The corporation was a "small business corporation" at the *285 time the plan was adopted. [5]Section 1244(c)(1)(B). (C) At the time the plan was adopted, no portion of a prior offering was outstanding. Section 1244(c)(1)(C). (D) The stock was issued by the corporation for money or other property (other than stock and securities). Section 1244(c)(1)(D), and (E) The corporation, during the most recent 5-year period derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities. *286 Petitioners have the burden of proving that the stock in question qualified as section 1244 stock. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). [6] The letter attached to petitioners' 1977 Federal tax return is not sufficient to establish that the stock became worthless in 1977 or that the stock in question was actually section 1244 stock. Furthermore, there is no evidence as to petitioner's basis in his Assured Equity stock. Mrs. Gorman offered only vague testimony indicating that her husband had received the stock in question in exchange for work he performed in 1972 or 1973. No evidence was presented as to the value of those services. Section 165(a) provides that a deduction shall be allowed *287 for any uncompensated loss sustained during the taxable year. Section 165(b) provides that "[f]or purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property." Generally, the adjusted basis for determining gain or loss is the cost of such property. Sections 1011 and 1012. It is generally accepted that an income item (i.e., unpaid wages) cannot be transformed into a capital asset, having a cost basis, until it is first included in income. Bryan v. Commissioner,16 T.C. 972, 980-981 (1951). See Commissioner v. Farren,82 F.2d 141 (10th Cir. 1936). Thus, when stock is received in exchange for services, the taxpayer's basis is equal to the value of the stock on the date of its receipt to the extent that that value was taken into the taxpayer's income in the year the services were performed. Petitioner failed to offer any evidence to show that he was taxed on the value of the services he rendered *288 in exchange for the Assured Equity stock. Furthermore, although Mrs. Gorman testified that petitioner worked for Assured Equity for some period of time during 1972 and/or 1973, petitioners were unable to provide any evidence as to the actual value of those services. The burden of proving the elements of a loss deduction under section 165, including petitioner's basis in the property, was on petitioners. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). They have failed to meet that burden and, accordingly, we hold for respondent on this issue. Issue 3. The Alpha Oil Partnership
FINDINGS OF FACT On their 1977 income tax return, petitioner claimed a $15,000 loss with respect to his 10 percent partnership interest in the Alpha Oil Company (hereafter "Alpha Oil"). Respondent disallowed the deduction because petitioners presented no evidence with respect to this loss. The only evidence in the record regarding this issue consists of a copy of an examination report of an audit of the partnership's 1977 return to income.The audit report indicates that respondent examined the partnership return, disallowed a claimed expense of $124,144.91 with respect to *289 an intangible drilling contract and therefore reduced the partnership's claimed loss to $25,855.09. Accordingly, respondent allowed petitioners to take a partnership loss on their 1977 return of only $2,585.51, which is 10 percent of $25,855.09. OPINION Petitioners have failed to provide any evidence to show error in respondent's determination made during the course of the Alpha Oil Company audit. Therefore, petitioners are not entitled to any deduction is excess of the $2,585.51 allowed by respondent. Rule 142(a); Welch v. Helvering,supra.
Issue 4. Oxford Investment Management Corporation
FINDINGS OF FACT On their 1978 income tax return, petitioners claimed a $41,000 ordinary loss as a result of their alleged failure to exercise options on Treasury Bills, and a Schedule A miscellaneous deduction for $4,800 in commissions that they claim were paid to Oxford Investment Management Corporation (hereafter "Oxford Investment"). No evidence was presented to substantiate either the payment of any amounts to Oxford Investment, or the purchase of any Treasury Bill futures by or on behalf of petitioners. Charles Black was the sole stockholder and chief *290 executive officer of Monetary Research Corporation, an Oregon corporation. In this capacity, Mr. Black offered his services to the public as a financial consultant and commodity trading advisor. He was principally active in the creation, promotion, and sale of various tax shelters, one of which was Oxford Investment. In April 1983, Charles Black was indicted on 38 counts of mail fraud, filing false tax returns, and aiding and assisting in the preparation of false income tax returns. He was found guilty by a jury on all 38 counts on November 16, 1983. The indictments state that Black and his associates promoted the sale of spurious tax shelters through Oxford Investment during the period from 1977 to 1980. Oxford Investment was organized in the Cayman Islands in order to take advantage of laws which totally prevented the disclosure to United States law enforcement authorities of any financial and business information concerning Oxford Investment. Mr. Black obtained the services of a Cayman Islands resident, Anthony M. Eden, to act as a figurehead for the operation and to perform certain ministerial duties on behalf of Oxford at Mr. Black's behest. The indictments of Mr. Black *291 reveal that for a relatively small investment, Oxford Investment promised to obtain United States Treasury Bill futures from commodity futures exchanges which, when obtained in conjunction with other commodity futures, would produce large ordinary losses in the year of the investment, followed by a corresponding capital gain in the subsequent year. Upon receiving checks from his clients, Mr. Black deposited these amounts into an account at the Georgetown, Grand Cayman Island Branch of the Royal Bank of Canada. The proceeds in this account were used for Mr. Black's own personal benefit. Except for a few token transactions engaged in to help create the illusion of legitimate Treasury Bill straddles, none of the proceeds in the account were used to obtain United States Treasury Bill futures. In order to further create the false impression that Treasury Bill futures contracts were actually purchased by Oxford Investment on behalf of the investing taxpayers, Mr. Black prepared false confirmation slips, client ledger sheets, and transaction summaries. In reality, the transactions evidenced by these contrived documents never occurred. OPINION Respondent contends that petitioners *292 are not entitled to deduct any amount which they allegedly paid to Oxford Investment as an expense for the production of income within section 212. He also contends that petitioners have failed to establish that Treasury Bill futures were actually bought or sold by or on behalf of petitioner. Accordingly, respondent argues that petitioners incurred no losses individually from the failure to exercise options with respect to these fictitious Treasury Bill futures. Petitioners seek to deduct their losses under section 165(c)(2) which permits individuals to deduct "losses incurred in any transaction entered into for profit, though not connected with a trade or business * * *." The statutory language in section 165 is augmented by section 1.165-1(b), Income Tax Regs., which provides as follows: (b) Nature of loss allowable. -- To be allowable as a deduction under section 165(a) a loss must be evidenced by closed and completed transactions, fixed by identifiable events, * * * actually sustained during the taxable year. Only a bona fide loss is allowable. Substance *293 and not mere form shall govern in determining a deductible loss. Petitioners have failed to present evidence to rebut respondent's assertion that Treasury Bill futures were never bought or sold by or on behalf of petitioner. Respondent's assertion is supported by evidence indicating that the transactions with regard to which petitioners are claiming their losses never took place. Furthermore, petitioners presented no evidence to substantiate the payment of any amounts to Oxford Management Corporation. Petitioners have the burden of proving that they are entitled to a loss deduction pursuant to section 165(c). Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933). See Burnet v. Houston,283 U.S. 223 (1931); and Edgar v. Commissioner,56 T.C. 717 (1971). They have failed to carry their burden. Petitioners also claimed a miscellaneous Schedule A deduction for $4,800 in commissions allegedly paid to Oxford Investment regarding the fallacious straddle transactions described above. *294 Individuals are permitted to claim a deduction for ordinary and necessary expenses paid or incurred "(1) for the production or collection of income and (2) for the management, conservation, or maintenance of property held for the production of income * * *." Section 212(1) and (2). Petitioners failed to present evidence to establish that they had paid any commissions to Oxford investment. Thus, petitioners have not satisfied their burden of proof with regard to this issue, and we sustain respondent's determination. Rule 142(a); Welch v. Helvering,supra.
Issue 5. Innocent Spouse Provision
FINDINGS OF FACT Petitioners have sought to qualify Mrs. Gorman for relief from liability under the innocent spouse provisions of section 6013(e). The parties stipulated that Mrs. Gorman signed petitioners' Federal income tax returns for both of the years in issue. In addition, Mrs. Gorman was responsible for maintaining the family financial records that were eventually given to the petitioners' accountant for use in the preparation of their income tax returns. Mrs. Gorman was also fully aware of the facts and *295 circumstances surrounding petitioner's involvement in Assured Equity Programs, Inc. Moreover, Mrs. Gorman signed checks in payment of $1,955.49 of the $2,831.49 in expenditures disallowed by respondent for travel and education for 1977. OPINION Respondent contends that section 6013(e) is not applicable to relieve Mrs. Gorman of her joint and several liability for the deficiencies, additions to tax, and the interest resulting from the disallowance of deductions and losses determined by respondent. [7] Respondent has conceded, however, that section 6013(e) will relieve Mrs. Gorman from liability with respect to petitioner's involvement with Oxford Investment. *296 Petitioners have the burden of proving that all four of the statutory prerequisites for relief pursuant to section 6013(e) have been satisfied. Rule 142(a); Ratana v. Commissioner,662 F.2d 220, 224 (4th Cir. 1981), affg. in part, and revg. in part a Memorandum Opinion of this Court; Sonnenborn v. Commissioner,57 T.C. 373, 380-381 (1971). The first requirement of section 6013(e) is that a joint return must be made for the taxable year in issue. Section 6013(e)(1)(A). The parties have stipulated that petitioners filed joint Federal income tax returns in both the 1977 and 1978 taxable years. Respondent contends, however, that petitioners have failed to satisfy the remaining requirements of section 6013(e). Section 6013(e)(1)(C) also requires that the spouse establish that "in signing the return he or she did not know, and had no reason to know that there was such substantial understatement." [8]Section 6013(e)(1)(C). Although it is not clear that Mrs. Gorman had actual knowledge of the substantial understatements, such knowledge may be imputed *297 if a person possessing Mrs. Gorman's experience and temperament would have known of the omissions. In order to satisfy Mrs. Gorman's burden of proof as to whether she knew or had reason to know of the omitted income, "petitioner must establish that a reasonably prudent taxpayer, with her knowledge of the family finances, would have no reason to know of the omission." Estate of Jackson v. Commissioner,72 T.C. 356, 361 (1979). In determining whether a spouse had reason to know of an understatement, this Court views as significant the spouse's degree of participation in business affairs or bookkeeping. Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975). *298 As previously noted, the parties stipulated that Mrs. Gorman signed the Federal income tax returns for both of the years in issue. In addition, Mrs. Gorman testified that she was responsible for maintaining the family financial records that were eventually turned over to petitioners' accountant for use in the preparation of their Federal income tax returns. Mrs. Gorman was also fully aware of the facts and circumstances surrounding petitioner's involvement in Assured Equity Programs, Inc. Moreover, she signed checks in the payment of approximately 70 percent of the $2,831.49 in expenditures disallowed by respondent for travel and education for 1977. In view of these circumstances, we think that, at a minimum, Mrs. Gorman had reason to know of the understatements resulting from the erroneous deductions claimed by petitioners when she signed the 1977 and 1978 returns. Taxpayers seeking relief from liability under the innocent spouse provision must, at a minimum, make some affirmative attempt to satisfy the requirements of section 6013(e). Petitioners' burden of proof "cannot be carried *299 by remaining silent" and that is essentially what the Gormans have done in the instant cases. Sonnenborn v. Commissioner,supra at 382. Mrs. Gorman must be denied the special relief provided for by the innocent spouse provision because she has failed to provide any evidence to satisfy the requirements of section 6013(e). We note that Congress has always regarded "joint and several liability as an important adjunct to the privilege of filing joint returns, and that if there is to be any relaxation of that rule the taxpayer must comply with the carefully detailed conditions set forth in section 6013(e)." Sonnenborn v. Commissioner,supra at 381. We conclude that petitioners have not been successful in bringing Mrs. Gorman within the protective scope of this provision. [9]
Issue 6. Additions to Tax for Negligence or Intentional Disregard of Rules and Regulations
FINDINGS OF FACT Respondent determined that petitioners are liable *300 for the additions to tax under section 6653(a) because a portion of their underpayments of tax on their 1977 and 1978 income tax returns was due to negligence or intentional disregard of the rules and regulations. Petitioners presented no evidence to negate this determination. We also note that petitioners claimed business expense deductions for country club dues, residential telephone expenses, subscriptions to books, magazines and periodicals, and travel expenses. Petitioners failed to show that these expenditures were made for business purposes. OPINION Section 6653(a) provides for an addition to tax of 5 percent if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. We have consistently held that taxpayers bear the burden of proving error in the respondent's determination of their liability for the addition to tax under section 6653(a). Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Enoch v. Commissioner,57 T.C. 781, 802 (1972). Here petitioners have failed to prove that their underpayments *301 were not due to negligence or intentional disregard of the rules and regulations. Therefore, we sustain respondent's determination on this issue. To reflect concessions made by the parties and our conclusions with respect to the disputed issues, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioners conceded during trial that they could present no evidence with regard to a long-term capital loss claimed on their 1977 return. We assume that petitioners have abandoned this issue.↩
4. Sec. 1244(b) and (c)↩ was amended by the Revenue Act of 1978 (Pub. L. 95-600, sec. 345(a), (b) and (c), 92 Stat. 2844) effective for stock issued after November 6, 1978. 5. A corporation is treated as a "small business corporation" if at the time of the adoption of the plan: (A) the sum of -- (i) the aggregate amount which may be offered under the plan, plus (ii) the aggregate amount of money and other property (taken into account in an amount, as of the time received by the corporation, equal to the adjusted basis to the corporation of such property for determining gain, reduced by any liabilities to which the property was subject or which were assumed by the corporation at such time) received by the corporation after June 30, 1958, for stock, as a contribution to capital, and as paid-in surplus, does not exceed $500,000; and (B) the sum of -- (i) the aggregate amount which may be offered under the plan, plus (ii) the equity capital of the corporation (determined on the date of the adoption of the plan), does not exceed $1,000.000. [Sec. 1244(c)(2)↩]
6. See Rosenfield v. Commissioner,T.C. Memo. 1981-665; Raskin v. Commissioner,T.C. Memo. 1981-153, affd. without published opinion 685 F.2d 436 (8th Cir. 1982); Kirven v. Commissioner,T.C. Memo. 1977-28↩.
7. Sec. 6013(e), as amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802, provides, in pertinent part, as follows: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. (2) Grossly Erroneous Items. -- For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse -- (A) Any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law. (3) Substantial Understatement. -- For purposes of this subsection, the term "substantial understatament" means any understatement (as defined in section 6661(b)(2)(A)) which exceeds $500. * * * The amendments in sec. 6013(e)↩ found in the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 484 were made applicable to all cases pending at the time of their enactment.
8. A "substantial understatement" is defined in sec. 6013(e)(3) as any "understatement" which exceeds $500. Sec. 6661(b)(2)(A) defines an "understatement" as the "excess" of -- (i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).↩
9. Because we hold that petitioners have failed to satisfy sec. 6013 (e)(1)(C), we find it unnecessary to discuss whether they have satisfied the requirements of secs. 6013(e)(1)(B) and 6013(e)(1)(D)↩.