**LIHME v. REINECKE, Collector of Internal Revenue.**

No. 4725.

Circuit Court of Appeals, Seventh Circuit.

June 17, 1932.

Julius Weiss and David E. Grant, both of New York City, for appellant.

George E. Q. Johnson, U. S. Atty., and John Potts Barnes, Sp. Atty., Bureau of Internal Revenue, both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

59 F. (2d) – 40½

EVANS, Circuit Judge.

Appellant brought this action in the District Court to recover $51,891.57 and $4,711.47, being the sums by him paid in excess of what he asserts was the correct amount of his income taxes for the years 1917 and 1918.

One E. C. Hegeler died owning one-half less one of the shares of stock of the Matthiessen & Hegeler Zinc Company and one-half less two of the shares of stock of the La Salle & Bureau County Railroad Company, a subsidiary. Two families (Hegeler and Matthiessen) together elected four directors of the parent company, and the said four directors named a fifth. Hegeler left seven children, one of them the wife of appellant, who is a chemist by occupation. These children created a trust, the corpus of which was the Hegeler family's one-half interest in the two aforesaid companies. By the trust agreement, Mary Carus, one of the children, was named trustee, and it was provided that the net dividends should be distributed in equal parts to each of the seven children.

Appellant was named as a director of the company and also later acted as its secretary and as its president. The beneficiaries of the trust, represented by the Board of Governors, agreed to pay appellant, for services as director of said company, a sum equal to a certain per cent. of the dividends on 212 shares of stock of said company.

Appellant testified that he was contemplating embarking in a somewhat competitive business, but refrained from so doing because of his official and salaried connection with the two above-named companies.

Appellant's total taxable income from all sources for 1917 was $376,460.07, and for 1918, it was $79,699.75. Controversy between appellant and appellee is limited to an item of $212,000 for the year 1917, and to an item of $33,592.80 for the year 1918. Determinative of the controversy over these two items is the answer to the fact query, Were these sums paid as dividends or as salary?

Appellant paid his tax on the assumption that these items represented dividends. Later, under protest, he paid additional sums based upon appellee's assumption that both sums were received as salary. The present action was then brought by him to recover the alleged overpayment for these two years, and for interest thereon.

There is admittedly considerable uncertainty over this issue. It would seem that the facts might have been established with greater definiteness and certainty. Nevertheless in the determination of the question,

634

it is apparent that such information was primarily in the possession of appellant and the members of the trust in which he and his wife were financially interested. Moreover, we are not called upon to determine the question originally, but rather to ascertain whether any substantial evidence supports the finding of the court.

Evidence tending to show that appellant was paid and received these sums as *salary* appeared in the resolution of the Board of Governors of the family trust. This resolution reads:

"Resolved that the *salary* of Mary Hegeler Carus * * * and that the *salary* of C. B. Lihme to be paid by this Board as a Director of said Zinc Company and Railroad Company shall be equal to five per cent. (5%) of the dividends on 213 shares of the stock of said Zinc Company."

It seems to be conceded that, although the resolution called for the payment of 5 per cent., the actual payment was 10 per cent.

Appellant testified, and his statement we accept as a true disclosure of the existing situation:

"A proposal was made by Mary Hegeler Carus (the trustee) and other members * * * that I should become a director in the company. * * * I was to receive the same compensation as other directors and the family also agreed to sell me a half interest of the Hegeler family's shares in the company; * * * some of the members told me they were willing to do it, they agreed to do it, but they did not know what price and so forth * * *, I said, 'Until such time that we' * * * 'purchased this half interest' that they were to give me a certain percentage of dividend and when we had received the half interest by purchase, such dividends were to cease, because we would get the dividends direct as owner of the interest. * * * The question of dividends was discussed and I was offered 5 per cent, but I felt reluctant about accepting it, since it was not sufficient to induce me to abandon my plans for * * * an interest in the Zinc Company (another company which appellant was contemplating entering) * * * I told them all right, that I would accept it with the understanding that it was only a temporary arrangement * * * I do not know if I ever received five; ten was what I received * * * *During the years 1917 and 1918 I received from Mrs. Carus ten per cent of the dividends which she received from Matthiessen & Hegeler Zinc Company. I reported this as a dividend along with my other dividends. I*

*did not report it as a salary. * * * Until we had a sufficient interest, we were to get this 10 per cent., and when we had this sufficient interest, which was half, then that was discontinued and we would get our dividends direct as owner of this portion. * * * the 10 per cent of the dividends * * * which I received yearly, and the promise to sell me some of the Hegeler stock was the inducement which was made to me to give up my plans to build (his own chemical plant)."*

The evidence also showed that appellant received a salary from the company for 1917, of $1,666.65 as secretary, $2,266.12 as director, and for 1918, $3,999.96 as president, and $3,000 as director. Appellant said the services rendered were negligible compared to the return he realized; that he attended directors' meetings of the company one day a month during the two years in question and did nothing else in connection with the management of the plant. He did some research work in an independent laboratory some of the results of which he turned over to the company. It also appeared that the payment of 10 per cent. of the dividends ceased when appellant ceased to act as a director.

Appellant never acquired the one-half interest which was promised him as an inducement not to start his own company. In 1917 and 1918, his wife and he increased their holdings in the trust, but neither appellant, nor he and his wife, ever acquired a half interest in the trust. Appellant purchased on his own account one *share* of the company's stock. Appellant and his wife apparently filed separate income tax returns.

Appellee argues that the District Court having found in her favor, and there being some evidence to support the finding, this court should affirm under the familiar rule which governs such a situation. Maryland Casualty Company v. Jones, 279 U. S. 792, 49 S. Ct. 484, 73 L. Ed. 960. In other words, where the evidence is conflicting, this court must accept as a verity the findings of the District Court. The application of this rule is challenged by appellant on the ground that the evidence is not conflicting and the uncontradicted testimony fails to support the conclusion that the two sums in controversy were paid appellant as salary. While we are inclined to accept appellant's position respecting the state of the evidence, we do not agree with him in his approach to the solution of the question. In other words, in order to eliminate these items from his taxable income, it was incumbent upon him to show that such sums were received as dividends.

The burden was not upon appellee to show they were salary payments. The classification of this payment is immaterial so long as it is not a dividend.

That the two items in question were not paid as dividends seems to be capable of mathematical demonstration.

The total amount received by the trust for 1917 was $2,120,000. If from this sum 20 per cent., or $424,000, be deducted as the amount paid to appellant and Mrs. Carus (allowing 10 per cent. compensation to each), there remains a balance of $1,696,000. Assuming appellant to have been the owner of one-fourteenth part of the trust fund, he was entitled to receive, as dividends from this $1,696,000, the sum of $121,142.86. If we add $121,142.86 and $212,000 together, we get $333,142.86, which is the exact amount appellant received from the trust for the year 1917.

If, on the other hand, we start with the sum of $333,142.86 as the total amount received by appellant from the trust, we are unable to reach any dividend yield upon his proportionate interest in the trust which produces this amount.

Appellant sought to explain the payment of $333,142.86 upon the following hypothesis: As the owner of one-seventh interest in the trust, his share of the dividends would be $302,857.15; his dividend on one-two hundred thirteenth part would be $9,953.05; the balance of the dividend, $20,332.66, should be allocated to joint interest with Mrs. Lihme, making a total of $333,142.86. This conclusion is reached only by assuming facts not established by the record. For example, the income tax return shows a dividend received upon the one share, of $10,000 in 1917, being a dividend paid directly to appellant on stock held by him in the Mattheissen & Hegeler Zinc Company. The second item is therefore eliminated. Moreover, the item of $20,332.66 finds no support whatever in the record for its allowance. Appellant filed a separate income tax return. Presumably, his wife also filed a separate return. Moreover, $20,332.66 does not represent the balance of dividends ascribable to a joint interest with Mrs. Lihme, assuming they held together a one-seventh or other interest in the trust. Nor is appellant justified in saying that his interest in 1917 was a one-seventh interest. Aside from the single *share* he acquired, and upon which he was paid a dividend and so reported in his income tax return, he owned a one-fourteenth interest in the trust. At least a fair construction of his own statement supports such a conclusion.

If we approach this question merely as one involving compensation for services rendered, the conclusion that the amounts paid were excessive would be inescapable. But other facts must not be overlooked. The parties contracted in 1910. The large profits resulting from the war were doubtless not in contemplation of the parties. In fact, they were hardly conceivable. Appellant was highly specialized in the field in which the company was engaged. He was contemplating the erection of a plant which would doubtless have competed more or less with the M. & H. Company. The contract was made with the expectation that its duration would be short, and that in a very few years, the sisters and brother-in-law would transfer to appellant, for a consideration mutually agreeable, a substantial interest in the enterprise. Moreover, according to his own admission, they paid him the specified percentage of the trust income. Such amounts were not paid as dividends, but as sums due under the contract. Whether he earned the amounts thus paid is a question perhaps for him and the other cestuis que trust to settle. As between the Government and the taxpayer, however, such amounts can not be called dividends.

As a final argument, we are unable to reconcile the failure to pay these sums after appellant ceased to be a director with his contention that they were paid as dividends and not as directors' compensation.

The judgment is affirmed.