## SALVAGE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 153.

Circuit Court of Appeals, Second Circuit.
March 18, 1935.

Jackson, Fuller, Nash & Brophy, of New York City (John G. Jackson and George B. Brooks, both of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The Board decreed a deficiency of $12,005.38 in the petitioner's income tax for the year 1929. He contends that not only is there no deficiency, but that he is entitled to a refund of $63,750. The controversy arises out of the fact that in 1929 the petitioner received $671,000 upon the redemption of 6,100 shares of preferred stock of American Viscose Corporation. The question in dispute is what part of this sum represents capital net gain; and this involves a determination of the cost base properly attributable to the redeemed shares.

In December, 1922, the Viscose Company, of which the petitioner Salvage was an officer and employee, increased its capital stock by 4,000 shares and permitted Mr. Salvage to acquire 1,500 of them. They were sold to him at par, $100 per share, pursuant to a contract dated December 30, 1922, which recited that they were sold at less than their real value in consideration of the agreement of Salvage therein set forth. By the contract he agreed (1) that the corporation should have an option to repurchase at par five-sevenths of the 1,500 shares at any time during 1923, four-sevenths during 1924, three-sevenths during 1925, two-sevenths during 1926, and one-seventh during 1927; and (2) that he would not engage at any time throughout his life in any competing business without the company's consent. Another contract of the same date permitted him to exchange each of these 1,500 shares for four preferred shares and five common shares of American Viscose Corporation, and, with respect to the aforesaid option of repurchase, expressly substituted for each share of old stock subject to it an equivalent block of the new preferred and common. The option was never exercised in any year. In addition to the above-mentioned 1,500

shares of the Viscose Company, Mr. Salvage owned 25 shares which he had acquired in 1916 at a cost of $166.66 a share. These 25 shares he also exchanged for stock of American Viscose Corporation on the same basis of four preferred and five common for one share of the Viscose Company stock. Altogether he received 6,100 preferred and 7,625 common shares of American Viscose in exchange for his 1,525 shares of Viscose stock. In 1929 his preferred shares, which were callable at $110 per share, were redeemed at the aggregate sum of $671,000. In his income tax return for 1929 he reported as capital net gain the difference between $671,000 and the sum of $154,166.66 which he had paid for the 1,525 shares of Viscose stock. In auditing the return, the Commissioner apportioned 37.778 per cent. of the petitioner's cost to the preferred stock and 62.222 per cent. to the common stock. This resulted in ascribing to the 6,100 preferred shares a cost base of $58,123.47, and produced the deficiency in question.

Before the Board the petitioner contended, first, that he had made a "bargain purchase" of the 1,500 shares of the Viscose Company stock on December 30, 1922, that the fair market value of such stock on that date was $1,164.70 per share, and upon this basis no taxable gain was realized on redemption of the preferred shares but rather there had been an overpayment of taxes; and, second, that it was impracticable to apportion the cost of the Viscose stock between the preferred and common shares of American Viscose so that no taxable gain was realized until the entire cost ($154,166.66) was recovered. The Board rejected both contentions.

It is conceded that the real value of Viscose stock on December 30, 1922, was $1,164.70 per share. The petitioner paid only $100 per share in cash, and the Commissioner concedes that the difference of $1,064.70 per share, if it had represented compensation for services past or future, would have constituted taxable income to the petitioner in 1922, and that the market value of the stock when acquired would be the proper basis for determining gain upon the subsequent sale (or redemption) of any stock exchanged for it in a nontaxable exchange. T. D. 3435, later incorporated in article 31, Reg. 65. Said Treasury Decision, now part of the Regulations, reads as follows:

"Where property is sold by a corporation to a shareholder or member, or by an employer to an employee, for an amount substantially less than its fair market value, such shareholder or member of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its cost shall be deemed to be its fair market value at the date of acquisition."

Although there is no suggestion in the language quoted that the property sold for less than its fair market value must be intended to be compensation to an employee for past or future services or in the nature of a dividend to a shareholder, the article has properly been so limited. Commissioner v. Van Vorst, 59 F.(2d) 677 (C. C. A. 9); Taplin v. Commissioner, 41 F.(2d) 454 (C. C. A. 6). In the Van Vorst Case the stockholder purchased real estate from his corporation at less than its market value, and the taxing officials attempted to include in his gross income the sum by which the market value of the land exceeded the price paid by the purchaser. This was not permissible because such excess value was not "income" within the meaning of the applicable revenue act. The Taplin Case was a similar ruling where stock was purchased for less than its real value. But where the excess value is in the nature of compensation for services it does constitute taxable income when received. Robinson v. Commissioner, 59 F.(2d) 1008 (C. C. A. 6); Rodrigues v. Edwards, 40 F.(2d) 408 (C. C. A. 2). In the case at bar the Board found that the stock was not acquired by the petitioner as compensation for services. The correctness of this finding is disputed, but, as it was made upon conflicting evidence, some of which tends to support it, we must accept it as a finding of fact.

Nevertheless, the Commissioner is not aided thereby. The contract under which the petitioner purchased the 1,500 shares of Viscose stock stated that the consideration for selling it at less than its real value was the petitioner's covenants relating to the option and to his refraining from engaging in a competing business. Compensation paid for refraining from labor would seem to be taxable income no less than compensation for services to be performed. For example, a farmer who is paid for voluntarily refraining from raising hogs receives, in our opinion, income. Certainly it is neither a capital

payment nor a gift. The statutory definition of gross income is exceedingly broad. Section 213, Revenue Act 1921 (42 Stat. 237). We cannot avoid the conclusion that a payment for a covenant not to engage in a certain business should be deemed "income" of the recipient of the payment. Cox v. Helvering, 63 App. D. C. 264, 71 F.(2d) 987, supports this view. See, also, Lihme v. Reinecke, 59 F.(2d) 633, 635 (C. C. A. 7). As to two-sevenths of the 1,500 shares, the petitioner acquired their full value on December 30, 1922. As to the rest, the Viscose Company still had a string upon them by virtue of its option. Until the option expired in subsequent years, the market value of the shares subject to it could scarcely exceed the price at which the company could repurchase them, namely, par. See Wilson v. Bowers, 57 F.(2d) 682, 683 (C. C. A. 2). We conclude, therefore, that Mr. Salvage made a "bargain purchase" of the 1,500 shares of Viscose stock acquired in 1922. Two-sevenths of the shares (428⁴⁄₇) were not subject to the option and had a market value of $1,164.70 a share, a total of $499,157.14; five-sevenths (1,071³⁄₇) had a market value of $100 per share, or $107,142.86. This gives a total market value for the 1,500 shares of $606,300, and the cash consideration paid for them by Mr. Salvage was only $150,000. The difference was the "bargain" given him in return for his covenant not to compete. He did not, however, return it as income in 1922.

■ The Commissioner argues that the petitioner should be estopped to claim the basis prescribed by T. D. 3435, since he did not report the "bargain purchase" as income in 1922. The actual decision in Robinson v. Commissioner, 59 F.(2d) 1008 (C. C. A. 6), is opposed to this contention, although the point is not discussed in the opinion. Crane v. Commissioner, 68 F.(2d) 640 (C. C. A. 1), tends to support it, although the facts are somewhat different. See, also, Edward G. Swartz, Inc., v. Commissioner, 69 F.(2d) 633, 635 (C. C. A. 5). In the Crane Case, Judge Morton, in a concurring opinion, repudiated the theory of estoppel, and in our judgment makes the sounder argument. So far as appears, the petitioner's failure to report the income in 1922 was due to an innocent mistake of law; he made no false representation of fact, and may, for all that this record discloses, have mentioned the purchase in his 1922 return. Under such circumstances we cannot find any adequate basis for an estoppel. See United States v. S. F. Scott & Sons, 69 F.(2d) 728, 732 (C. C. A. 1); Helvering v. Brooklyn City R. Co., 72 F.(2d) 274, 275 (C. C. A. 2); Sugar Creek Coal & Mining Co. v. Commissioner, 31 B. T. A. 344 (No. 72). Hence the fact that neither the petitioner nor the Viscose Company reported the sale of stock at less than its value as constituting income to the petitioner in 1922 is not material to the present issue, even though it may now be too late for the government to assess an income tax for that year.

■ The next step was the exchange of the 1,500 "bargain" shares and the 25 additional shares of Viscose stock for preferred and common shares of American Viscose stock. The cost base of the bargain shares, as shown above, was $606,300, and the cost base of the additional shares was $4,166.66, a total of $610,466.66. Assuming for the present that the cost base can be apportioned, according to the percentages adopted by the Commissioner, between the preferred and common shares received in exchange, the basis for the preferred shares is 37.778 per cent. of $610,466.66, or $230,622.09, and the basis for the common is 62.222 per cent., or $379,844.57.

This brings us to the other contention, namely, that no apportionment between preferred and common stock is proper. Article 1567 of Regulation 62, so far as applicable, reads as follows:

" * * * If property is exchanged for two kinds of property and no gain or loss is recognized under articles 1564 or 1566, the cost of the original property should be apportioned, if possible, between the two kinds of property received in exchange for the purpose of determining gain or loss upon subsequent sale. If no fair apportionment is practicable, no profit on any subsequent sale of any part of the property received in exchange is realized until out of the proceeds of sale shall have been recovered the entire cost of the original property."

The validity of this regulation has been recognized by the courts. Houghton v. Com'r, 71 F.(2d) 656 (C. C. A. 2), certiorari denied 55 S. Ct. 124, 79 L. Ed. ——; Curtiss v. Com'r, 57 F.(2d) 847 (C. C. A. 5); Kirkland v. Burnet, 61 App. D. C. 88, 57 F.(2d) 608. Indeed, the taxpayer does not question its validity but contends that by its very terms, since no fair apportionment of the cost was practicable, the entire cost of.

the old stock must be recovered from the amount realized by redemption of the new preferred. He argues that in The Viscose Co., 3 B. T. A. 444, the Board held that the assets of the corporation could not be accurately valued because they were a mixed aggregate of tangible and intangible property, and therefore urges that it was impossible in 1922 to value the stock by the formula adopted by the Commissioner. The Commissioner adopted a method which this court approved in Houghton v. Commissioner, supra. Moreover, it was in exact accord with the report made by a firm of certified public accountants employed by the taxpayer for the very purpose of determining his federal income tax in accordance with the regulations. Although there were no actual sales of either the old or the new stock, there can be no doubt that it could have been sold, if offered, for the business had been extraordinarily successful over a period of several years. The taxpayer has not proved that the market value ascribed by the Board to preferred and common stock was erroneous or that no fair apportionment between them of the cost of the old stock was practicable. We accept the Board's finding that it was practicable.

It is true that the Board did not consider the fact that five-sevenths of the 1,500 Viscose shares acquired in 1922 were subject to an option. Its apportionment was made on the assumption that each share of Viscose had a market value of $1,164.70 and was exchanged for a block of four shares of preferred and five shares of common of American Viscose, which, as a block, had a value of $1,164.70. Because of the option, each optioned share of Viscose had a value of only $100, and the block of American Viscose for which it was exchanged also had a value of only $100 because as a block it was subject to the option. We see no reason, however, why the consideration paid for the optioned block should not be apportioned between preferred and common shares constituting it, on the same basis as in the case of a block not subject to the option. Accordingly the cost base of the 6,100 shares of preferred was, as shown above, $230,622.09. As the base adopted by the Commissioner was $58,123.47, it follows that there was no deficiency in tax, but a substantial overpayment, the exact amount of which should be determined by the Board in accordance with the principles laid down in the foregoing opinion.

Order reversed, and cause remanded.