## COMMISSIONER OF INTERNAL REVENUE v. YATES.

### No. 5814.

Circuit Court of Appeals, Seventh Circuit.

Dec. 8, 1936.

Robert H. Jackson, Asst. Atty. Gen., and Sewell Key, Norman D. Keller, and Ellis N. Slack, Sp. Assts. to Atty. Gen., for petitioner.

Clay Judson, of Chicago, Ill., for respondent.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

SPARKS, Circuit Judge.

The Commissioner has petitioned for review of a decision of the Board of Tax Appeals holding that there was no deficiency in respondent's income tax for the year 1930. He contends that because certain cash credits on the books of a corporation used by respondent and her husband to pay for the stock of that corporation had been largely profits to them in the year 1928, but had not been returned by them in that year, and as to which no income tax had been paid, respondent was estopped from using those credits to establish a cost basis for the stock which she sold in 1930.

Except the 1928 tax returns of respondent and her husband, no facts were introduced other than those stipulated under Rule 38 of the Board of Tax Appeals. Substantially, they are as follows:

The deficiency is claimed to be due by reason of profits from the sale of stock of Marshall Field and Company in 1930. The stock sold was acquired during a reorganization in that year in exchange for 3643 shares of Class B stock given the taxpayer by her husband in 1928, and for 357 shares of Class B stock acquired directly by the taxpayer in the same year.

The husband used a credit of $236,795 which he had on the books of the company to pay for the 3643 shares, the basis of acquisition being at the rate of $65 a share. The credit resulted from a reorganization of the company in 1928, whereby the husband turned into the company 2368 shares of Class A stock, for which he received the Class B stock and the credit referred to. The 2368 shares of Class A stock had cost the husband $58,367.72, of which cost, $5,306.16 was applicable to the 2368 shares of Class B stock. Likewise, the respondent acquired her 357 shares of Class B stock directly from the company with a credit on the books of the company of $23,205, which was at the rate of $65 a share. She had obtained this credit by turning in 232 shares of Class A stock for which she received 357 shares of the Class B stock and the credit referred to. The Class B stock had cost her $5,718.46, of which $519.86 was applicable to the 232 shares of Class B stock which she received in exchange.

Both respondent and her husband had settled their entire tax liability with the Government for the year 1928, and, together with the Government's duly authorized representative, had signed the usual written closing agreement [1] to that effect, pursuant to section 606 of the Revenue Act of 1928 (26 U.S.C.A. § 1660), and the agreement was duly approved by the Secretary of the Treasury within the time specified in the agreement.

Although the taxpayer and her husband did not return and pay a tax in 1928 based on the receipt of the credits referred to, they did pay in full the amount shown due by the Government's final determination, after a complete field audit of the records of respondent and her husband by the representative of the Bureau of Internal Revenue.

In figuring the additional tax, the Commissioner disallowed any cost basis on the stock sold, and assumed that the entire sale price was profit. The taxpayer claimed that the stock sold had a total purchase price of $260,000, and that only the difference between that amount and the sale price of $318,500 was profit. It is now conceded by the Government that the credits used by respondent and her husband in acquiring the stock had an allocable cost basis of $58,260.16, which was the cost to them of the original stock.

Upon these facts, the Government contends (1) that the cost of the stock, for the purpose of determining the gain or loss from the sale, is the allocated cost basis of the credits, (2) that the respondent is estopped to claim that the base for determining the gain from the sale is the value of the credit in 1928, because the credits were not reported as taxable income in that year or any other year.

It is clear that the actual cost of the stock, acquired in 1928 and sold in 1930, was $260,000, as stated in the taxpayer's petition filed before the Board of Tax Ap-

---

[1] " * * * Now, This Agreement Witnesseth, that the said taxpayer and said Commissioner of Internal Revenue hereby mutually agree that the principal amount of such liability so determined shall be final and conclusive if this agreement is approved by the Secretary of the Treasury, or the Undersecretary, within six months from the date this agreement is signed by the taxpayer * * * "

peals. That fact was found by the Board on substantial evidence and is undisputed by the Government. It constitutes the only basis for the Government's second contention. It is obvious, therefore, that unless the second contention prevails, the first contention must fail.

Section 606 of the Act of 1928 (26 U.S. C.A. § 1660), under which respondent's closing agreement was executed, authorized the Commissioner to enter into an agreement in writing with any person, relating to his liability in respect of any internal revenue tax for any taxable period ending prior to the date of the agreement. It further provided that if the agreement were approved by the Secretary, or Undersecretary, within such time as might be stated in such agreement, the agreement should be final and conclusive, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact. It further provided that the case should not be reopened as to the matters agreed upon, or the agreement modified by any officer, employee, or agent of the United States; and in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, should not be annulled, modified, set aside, or disregarded.

The Government made no charge of fraud or malfeasance in this action, and the only charge of misrepresentation is of an indirect or negative character, that is to say, it argues that the failure of respondent and her husband to disclose in their returns that they had received the involved credits in the year 1928, was tantamount to their affirmative statements that they had not received them, and thus created against respondent a quasi estoppel. We think the argument is not sound. We must concede that Congress had some purpose in enacting the statute. Obviously, it was to expedite the settlement and payment of taxes by extending to the taxpayer some assurance of finality. To adopt the construction now urged by the Government would render the statute meaningless, for so long as any item of income was omitted, however innocently, the closing agreement would have no binding effect, and the taxpayer would be in precisely the same position as he was prior to the enactment.

In view of the stipulations of the parties and the closing agreement executed by the Government with respondent and her husband, we are quite in accord with the Board's conclusions as expressed in the following language:

"* * * we are impressed that this is simply an effort to collect income taxes from the petitioner and her husband for 1928, a year not before us, and, as we view the facts, any misrepresentations that may have been made by the parties * * * in respect of their income tax liability for 1928 would be much more susceptible of construction as grounds for setting aside the final closing agreements than as a basis for the application of the doctrine of estoppel against the petitioner in respect of her income tax liability for 1930."

A consideration of the authorities relied upon by the Government convinces us that they are not applicable to the facts before us.

The decision of the Board of Tax Appeals is affirmed.