### UNITED STATES v. DU PONT.
Civil Action No. 244.

District Court, D. Delaware.
Nov. 5, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Lester L. Gibson, Sp. Assts. to Atty. Gen., and Stewart Lynch, U. S. Atty., of Wilmington, Del., for plaintiff.

Edwin D. Steel, Jr. (of Morris, Steel, Nichols & Arsht), of Wilmington, Del., and Percy W. Phillips, of Washington, D. C., for defendant.

LEAHY, District Judge.

During World War I the DuPont Securities Company ("Securities Company" herein) was formed as a securities holding company, the holdings of which consisted of stock of E. I. duPont de Nemours Powder

Company ("Powder Company" herein), which was then just emerging from its state of industrial adolescence to become one of the larger influences in the nation's economic life. The name of Securities Company was later changed to Christiana Securities Company, and it is presently known by that name.

On March 2, 1915, defendant contributed 1,880 out of a total of 11,750 shares of Securities Company stock deposited in the treasury of Securities Company by large stockholders of both Securities Company and Powder Company for the purpose of setting up a plan to encourage certain valuable employees, thought to be its coming managers, to remain with Powder Company. The directors of Securities Company met on March 19, 1915, and resolved to assign the 11,750 shares to the designated employees of Powder Company subject to a "trust agreement," which made the allocated shares the absolute property of each employee-beneficiary only in the event that he continued in the employ of Powder Company for a period of one year from the date of the agreement. The shares allocated to any employee who left the Powder Company within that period were to revert to Securities Company and become its absolute property (unless the departure was caused by the employee's death, in which case the shares were to become the property of his legal representative).

Defendant's was a dual role, since—in addition to contributing 1,880 shares—he received 1,250 shares as one of the participating employees of Powder Company. On March 20, 1916, he was advised by letter that the conditions under the trust agreement had been met, and that the stock was his "sole and absolute property." However, he did not report the receipt of the 1,250 shares as income because he believed he had received them as a gift rather than as compensation for services rendered and to be rendered.

During 1936, defendant sold 356 of the shares received as above outlined and used $191.496 per share as the cost basis in calculating his income tax for that year. Subsequently, sometime after December, 1940, the Commissioner determined that the shares had a zero basis because of the defendant's failure to report their receipt as income in 1916. This determination resulted in a deficiency for 1936 in the amount of $15,747.12. However, the statute of limitations [1] having in the meantime run on the 1936 taxes, the Commissioner's sole recourse was to request that the Government bring the present suit under 26 U.S.C.A. Int.Rev.Code, § 3746(a) to recover a $1,044.48 refund together with interest from the date of its payment. This refund had been paid to defendant on December 7, 1940 in connection with other items in his 1936 return.[2]

Defendant resists the Government's claim on two grounds: (1) The receipt of the 1,250 shares in 1916 was a gift, so that he is entitled to use the fair market value of the shares at the time he received them as his cost basis;[3] (2) even if the shares were, as urged by the Government, compensation for services, he is nevertheless entitled to use the same cost basis.

No question is raised as to defendant's good faith throughout.

Defendant's main reliance for his contention that the shares were a gift in 1916 is upon Bogardus v. Com'r, 302 U.S. 34, 58 S.Ct. 61, 65, 82 L.Ed. 32.[4] In that case, Universal Company, which had been successfully operated from 1914 to 1931, organized Unopco and exchanged its stock for that of Universal. It then sold the Universal shares for $25,000,000. Later, the stockholders of Unopco, former stockholders of Universal, voted to show their appreciation for the loyalty and support of some of the employees of Universal by making them a "gift or honorarium." The beneficiaries of this plan had performed no services for Unopco and its stockholders, who were no longer stockholders of Universal. The Board of Tax Appeals and the Circuit Court held the payments were compensation for services, but the Supreme Court reversed.

---

[1] 26 U.S.C.A. Int.Rev.Code, § 275(a).

[2] Following investigation of defendant's 1936 return, additional taxes aggregating $7,973.25 were assessed and were paid by taxpayer. Thereafter, on April 18, 1940, defendant filed a claim for refund of tax erroneously reported and paid in 1936 upon certain dividends distributed to defendant by Kennecott Copper Company out of depletion reserve. Refund was allowed in the amount of $1,044.48 ($997.62 plus $46.86 interest).

[3] 26 U.S.C.A. Int.Rev.Code, § 113(a) (4).

[4] Cf. Jones v. Commissioner, 3 Cir., 31 F.2d 755, and Cunningham v. Commissioner, 3 Cir., 67 F.2d 205.

■ The Bogardus case is not controlling. It was the specific intent of Unopco simply to show the appreciation of its stockholders for the former services of the Universal employees—in whose efforts they no longer had any pecuniary interest. Here, Securities Company was a holding company of Powder Company stock; its financial success depended upon that of Powder Company. The plan was set up for the reason stated in the resolution of the directors: " * * * to recognize the past and encourage the future services of certain of the employees of said Powder Company." Again, the letter sent to defendant on March 20, 1916, stated that the shares were his outright property because he had complied with the trust agreement by remaining in the employ of Powder Company since March 19, 1915. Not until he had done this did the shares become his. These facts bring the case within the exception [5] to the rule of the Bogardus case as stated by the Supreme Court itself, viz.: "If the disbursements had been made by the Universal Company, or by stockholders of that company still interested in its success and in the maintenance of the good will and loyalty of its employees, there might be ground for the inference that they were payments of additional compensation." I accordingly conclude that Securities Company distributed the shares to defendant as additional compensation for past as well as future services to Powder Company and that defendant should have reported the receipt of the shares as income in 1916.

If defendant had reported the fair market value of the shares as income in 1916 he could, without question, have used the amount so reported as the basis of the shares when he sold some of them in 1936. The government would predicate his right to use this basis upon Article 22(a)–1 of Treasury Regulations 94, which reads in part: "if property is transferred * * * by an employer to an employee, * * * for an amount substantially less than its fair market value, such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its basis shall be the amount paid for the property [here zero], increased by the amount of such difference *included in gross income.*" Under this view of the case, the language of the Regulations which I have italicized would be a bar to defendant's present position, and it would be unnecessary for me to look into the question of estoppel. Cf. Commissioner v. Farren, 10 Cir., 82 F.2d 141.

■ However, I am of the opinion that taxpayer's right to use the fair market value of the shares as their basis upon sale derives from the statute itself. 26 U.S.C. A. Int.Rev.Code, § 113(a), reads in part: "The basis of property shall be the cost of such property * * *." Having held that the shares were compensation for services, I assume that the corporation got its money's worth and that defendant "had rendered in exchange services of equivalent worth." Countway v. Commissioner, 1 Cir., 127 F.2d 69, 74. I must therefore consider the government's alternative proposition that defendant is estopped to deny a zero basis.

The doctrine of estoppel is one of the most confused and entangled subjects in all tax law. Maguire and Zimet, Hobson's Choice and Similar Practices in Federal Taxation, 48 Harv.L.Rev. 1281. However, I need not enter into an analysis of the differences in view of the various circuits on the question of estoppel, because the facts of this case do not conform to the requirements for its application by any test.

■■ In the first place, a taxpayer cannot be estopped to assert the true facts unless he has endeavored to change his position. Countway v. Commissioner, supra. Defendant here still contends, as he has continually since 1916, that the shares were received as gift. He is "quite content to be held now to the same position he took in" 1916. It is the government which attempts to assert a different position; it now for the first time presses the compensation-for-services construction of the 1916 transaction. Under these circumstances, as stated in the Countway decision, supra, defendant is "not estopped to prove what [his] statutory basis is on the theory asserted by the Commissioner."

Nor can I accept the Government's view that my present finding that the shares were received as compensation for services and were income taxable in 1916 renders

---

[5] Cf. Willkie v. Commissioner, 6 Cir., 127 F.2d 953, certiorari denied October 12, 1942, 63 S.Ct. 58, 87 L.Ed. ——, for recent approval of the exception.

defendant's failure to report the receipt of the shares in 1916 a representation that they were without value. Again as stated by Judge Magruder in the Countway decision, supra: "It would be an unwarranted extension of the Crane [6] case to torture the good-faith non-reporting of the taxable exchange in the return for [1916] into a representation that the [shares] were worth zero at the time they were [received] and that therefore the cost basis of such shares in petitioners' hands was zero."

■ An estoppel cannot, by the better rule, be predicated upon an error of law but only upon an error of fact. Salvage v. Commissioner, 2 Cir., 76 F.2d 112, affirmed Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Commissioner v. Union Pacific R. Co., 2 Cir., 86 F.2d 637; Schmidlap v. Commissioner, 2 Cir., 96 F. 2d 680; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 121 F.2d 948; Commissioner v. American Light & Traction Co., 7 Cir., 125 F. 2d 365. Sole error to which the government can point is defendant's representation—implied from his failure to report the shares in 1916—that they were received as a gift. The government has had knowledge of all the facts ever since 1916, in which year defendant attached to his income tax return a statement that he was not returning as income for that year certain dividends on the shares here in question because his right to retain the shares was in litigation.[7] The 1916 return was the subject of adjustment and complete examination by the Government in 1920, and taxable income was increased by dividends received by the defendant upon the stock of Securities Company without any effort or suggestion on the Commissioner's part to assert that defendant had received any taxable income by the receipt of the Securities Company shares under the March 19, 1915 "trust agreement." Indeed, the entire transaction was given avid public attention.[8] At trial, counsel for the government admitted this when he objected to the introduction of evidence concerning the details of the formation and early operation of Securities Company on the ground that "It's more or less public property, anyway." There is no evidence that the Government was misled. There is before me, then, only a continuing representation that the shares were received as a gift. As I have held, this was error, but the error was clearly one of law. This cannot be the basis of an estoppel.

I conclude that the cost basis of the stock was properly its fair market value when received, and I reject the government's contention that the shares should have a zero value. Accordingly, the government has no claim against taxpayer, and the complaint should be dismissed.

Findings of fact and conclusions of law have been filed with this opinion in conformity with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

---

[6] Crane v. Commissioner, 1 Cir., 68 F. 2d 640.

[7] For a discussion of the organization of Securities Company and its and defendant's right to hold the Powder Company stock, see DuPont v. DuPont, D. C., 234 F. 459; Id., D.C., 242 F. 98; Id., D.C., 246 F. 332; Id., D.C., 251 F. 937; Id., 3 Cir., 256 F. 129.

[8] "DuPont," Fortune Magazine, Nov., 1934; John K. Winkler, "The DuPont Dynasty"; Marquis James, "Alfred I. DuPont"; William S. Dutton, "DuPont, One Hundred and Forty Years"; Moody's Manual of Corporation Securities, 1906–1936.