## COMMISSIONER OF INTERNAL REVENUE v. MELLON.

## COMMISSIONER OF INTERNAL REVENUE v. SCAIFE.

### Nos. 10092, 10093.

United States Court of Appeals Third Circuit.

Argued March 21, 1950.

Decided Aug. 25, 1950.

Morton K. Rothschild, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Helen Goodner, Special Assistants to the Attorney General, on the brief), for appellant.

Charles E. Kenworthey, Pittsburgh, Pa. (William M. Robinson, William A. Seifert, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for respondents.

Before McLAUGHLIN and KALODNER, Circuit Judges, and FEE, District Judge.

KALODNER, Circuit Judge.

Richard K. Mellon and his sister, Sarah Mellon Scaife, taxpayers, sold shares of stock of Pullman Incorporated ("Pullman") in 1941 and 1942, and in 1941, 1942 and 1943, respectively. What the basis for this stock should be, for tax purposes, is the ultimate question in these cases. The taxpayers have claimed substantial losses, and the Tax Court, by unanimous decision, agreed. 12 T.C. 90.

The taxpayers received part of the Pullman stock in exchange for stock they directly held in the Standard Steel Car Company ("Standard") in 1930. Part of the Pullman stock was received by them upon the termination of trusts in 1936, of which they were beneficiaries, but the trusts had

received the Pullman stock under the same conditions, in exchange for Standard stock held by the trusts in 1930.

The circumstances relating to the exchange in 1930 of the Standard stock for Pullman stock were the subject of disagreement in the Tax Court. The Commissioner contended that there had been a nontaxable reorganization of Standard and Pullman in 1930, but the taxpayers contended, and the Tax Court held, that the transaction between the two business enterprises in 1930 did not constitute a reorganization within the meaning of Section 112(i) (1) (A) of the Revenue Act of 1928, 26 U.S.C.A.Int. Rev.Acts, page 379. This holding is not now contested by the Commissioner, and therefore we need not set out the details of the matter.

However, in 1931 following receipt of the Pullman stock, one of the taxpayers, Sarah Mellon Scaife,[1] specifically requested of the Commissioner a ruling with respect to (1) whether any gain to the taxpayer was to be recognized as a result of the receipt by her from Standard of Pullman stock and cash, and (2) whether the gain, if any, was taxable as a dividend or as a distribution in liquidation. The Commissioner now concedes that a full disclosure of all relevant facts was made at the time; briefs were filed and conferences held with representatives of the Commissioner. The Commissioner then advised Mrs. Scaife, by letter dated June 30, 1931, that the gain, if any, resulting from the receipt of Pullman stock and cash constituted capital gain, and the amount thereof to be recognized for tax purposes should not be in excess of the amount of cash received. By letter dated June 30, 1931, the Acting Commissioner of Internal Revenue advised the Internal Revenue Agent in Charge at Pittsburgh, Pennsylvania, that the acquisition of Standard assets by Pullman was a reorganization under

Section 112(i) of the Revenue Act of 1928, that no gain to Standard was to be recognized, and that gain to Standard's stockholders was to be recognized but in an amount not in excess of cash. In their returns for 1930, the taxpayers treated the cash as income, but the Revenue Agent, in 1932, in reports covering taxpayers' returns and books and records, transferred the cash from "other income" to "capital gain", and these adjustments were approved by the Bureau of Internal Revenue in the final determination of the liability of both taxpayers for 1930. The trustee for the two trusts had included the cash received in 1930 as capital gain.

The actual distribution of Pullman stock was made on March 26, 1930, and it was stipulated below by the taxpayers and the Commissioner that the average selling price of the Pullman stock on that date on the New York Stock Exchange was $82.0625. It is this amount which the Tax Court sustained as the basis for computing the realization by the taxpayers on the sale of their Pullman stock in the taxable years.[2] However, it was also stipulated that in the event final decision in these controversies favors the Commissioner, then the basis for the Pullman stock should be $30.668 for the purpose of determining gain and $6.2861 for the purpose of determining loss.[3]

Although the Commissioner, as stated, no longer contends that the transaction which resulted in the exchange of Standard and Pullman stock in 1930 was nontaxable, he vigorously asserts that the decision of the Tax Court is erroneous for two reasons. First, he says the taxpayers accepted the tax benefit of treating the receipt of the Pullman stock as nontaxable in 1930, the consequence of which, if the determination then were right, should be that the basis for the Pullman stock became the allocable part of the basis of the Standard stock; accordingly, they should not now be per-

1. It is conceded by the Commissioner that Mrs. Scaife was apparently speaking not only for herself, but also for Richard K. Mellon and the trusts.

2. In determining their losses, the taxpayers used $82.50 per share as the basis

for the Pullman stock. The Commissioner reduced this basis to $30.668.

3. It was further stipulated that the Commissioner had erred in allowing deductible capital losses to the taxpayers in the taxable years by using a basis of $30.668 per share instead of $6.2861.

mitted, long after the statute of limitations [4] bars assessment of deficiencies for 1930, to establish that the exchange was taxable, the consequence of which, according to the Tax Court, is that the basis for the Pullman stock is stepped up to $82.0625, the fair market value of that stock on the critical date in 1930. Second, the Commissioner asserts that even if the taxpayers are permitted to show that the transaction in 1930 was taxable, the Tax Court erred in assuming that the proper basis for the Pullman stock is its fair market value in 1930. The word "assuming" is used advisedly, for this issue was not raised in the Tax Court, and the Commissioner would have the cases remanded because the record does not disclose that the taxpayers had any "cost" for their Standard stock; rather, it suggests that the Standard stock was acquired by gift from their father but does not show "in terms" the basis for the Standard stock in his hands.[5]

The Commissioner's first point bears the earmarks of the defense of estoppel. Nevertheless, the record here leaves nothing support it, for the Commissioner was ac-

quainted with all the facts at the appropriate time; there was no misrepresentation, no misstatement, nor any failure to report. The long and short of it is that the Commissioner made an error of law in determining the taxpayers' (and trusts') income tax liability for 1930, which is now walled up by the statute of limitations. What the Commissioner urges, however, is a duty of consistency upon the part of the taxpayers in their dealings with him which requires that the earlier treatment be continued even though the taxpayers acted in good faith and the technical elements of estoppel may be absent. We think the weight of authority is against Commissioner on the facts of the cases here in controversy.[6] Bennet v. Helvering, 2 Cir., 1943, 137 F.2d 537, 149 A.L.R. 1146, seems to us to state the logic which should control here, and we are content with the clear and effective presentation of it by Judge Hand. Parenthetically, it may be noted that the Court of Appeals for the First Circuit in Ross v. Commissioner, 1948, 169 F.2d 483, 494, 7 A.L.R.2d 719, similarly subscribed to Judge Hand's view. Speaking for the Court in that case,

Moreover, Section 3801 of the Internal Revenue Code, 26 U.S.C.A. § 3801, does not apply prior to December 31, 1931.

5. With respect to the Pullman stock acquired by the taxpayers in 1936 from the trusts, the Commissioner suggests that Section 113(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 113 note, would be applicable to the year 1941, and that Section 113(a) (2) of the Code, as amended by Section 143(a) of the Revenue Act of 1942, 26 U.S.C.A. § 113(a) (2), would be applicable to the years 1942 and 1943. Section 113(a) (2) provides that the basis of property transferred in trust shall be the same as it would be in the hands of the donor except that for purposes of determining loss the basis shall be the donor's basis or the fair market value of the property at the time of the gift, whichever is lower.

6. First Circuit: United States v. Dickinson, 1938, 95 F.2d 65; Commissioner v. Saltonstall, 1941, 124 F.2d 110; Ross v. Commissioner, 1948, 169 F.2d 483, 7 A.L. R.2d 719.

Second Circuit: Salvage v. Commissioner, 76 F.2d 112, affirmed 1936, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511;

Schmidlapp v. Commissioner, 1938, 96 F.2d 680, 118 A.L.R. 297; Helvering v. Schine Chain Theatres, Inc., 1941, 121 F.2d 948; Lembcke v. Commissioner, 1942, 126 F.2d 940; Bennet v. Helvering, 1943, 137 F.2d 537, 149 A.L.R. 1146.

Third Circuit: Commissioner v. Fidelity-Philadelphia Trust Co., 1937, 93 F. 2d 1001; United States v. Du Pont, D. C.Del.1942, 47 F.Supp. 894.

Fourth Circuit: Hull v. Commissioner, 1937, 87 F.2d 260.

Sixth Circuit: Joyce v. Gentsch, 1944, 141 F.2d 891.

Seventh Circuit: Commissioner v. Yates, 1936, 86 F.2d 748; Commissioner v. American Light & Traction Co., 1942, 125 F.2d 365.

Eighth Circuit: Helvering v. Williams, 1938, 97 F.2d 810; Northwestern States Portland Cement Co. v. Huston, 1942, 126 F.2d 196.

Ninth Circuit: Hawke v. Commissioner, 1940, 109 F.2d 946, certiorari denied 311 U.S. 657, 61 S.Ct. 11, 85 L. Ed. 421.

D.C. Circuit: Louis Werner Saw Mill Co. v. Helvering, 1938, 68 App.D.C. 267, 96 F.2d 539.

Tax Court: Pancoast Hotel Co. v. Commissioner, 1943, 2 T.C. 362.

Mr. Justice Frankfurter said: "While the doctrine [of consistent dealing] is urged in the name of equity, it is far from clear where the equities are in this case. The statute of limitations itself has equitable aspects and the difficulty with respondent's [Commissioner's] argument is that 'it does not do equity unless supplemented by what in the end comes to a reassessment of the first tax' in violation of the statute of limitations."

The cases relied on by the Commissioner do give effect to a theory of estoppel in terms of a "duty of consistency".[7] Nevertheless, the principal of these cases, in applying such doctrine of consistent treatment, emphasize the misleading character,[8] akin to misrepresentation of fact, ascribed to the prior income tax return closed to the Commissioner by the statute of limitations, either in the failure to report taxable income,[9] the treatment of it,[10] or the value attributed therein to property.[11] Concededly, on the facts of the cases *sub judice* there is no room for such a preliminary inference. And there is concurrent indication that the result of these cases would not obtain where none of the designated conditions prevails.[12]

Our conclusion, therefore, is in agreement with that of the Tax Court, that the taxpayers under the particular facts of these cases, are not precluded from establishing the true nature, taxwise, of the corporate transaction which occurred in 1930.

The Commissioner's second point is premised on the assertion that the tax laws do not "in terms" prescribe the basis of stock received in exchange for gift stock. Therefore, it is contended that the Court is free to determine the proper basis for the Pullman stock here involved as a matter of principle, and it is suggested that the starting point be the donor's basis for the Standard stock. But to make this argument in this Court, the Commissioner must meet the taxpayers' answer, that he did not present it first to the Tax Court. Indeed, the failure of the Commissioner in this respect was not merely negative, for it was expressly conceded in the Tax Court that, "If, as contended by the Petitioners [taxpayers], the reorganization was taxable, then it follows that the basis of the Pullman stock is its fair market value on the date of the exchange. The dollar amounts of these respective bases, or the facts from which the

---

7. Bothwell v. Commissioner, 10 Cir., 1935, 77 F.2d 35; Alamo National Bank v. Commissioner, 5 Cir., 1938, 95 F.2d 622, certiorari denied 304 U.S. 577, 58 S.Ct. 1047, 82 L.Ed. 1541; Orange Securities Corp. v. Commissioner, 5 Cir., 1942, 131 F.2d 662; Commissioner v. Timken, 6 Cir., 1944, 141 F.2d 625; Wichita Coca Cola Bottling Co. v. United States, 5 Cir., 1945, 152 F.2d 6, certiorari denied 327 U.S. 806, 66 S.Ct. 964, 90 L.Ed. 1031; Johnson v. Commissioner, 5 Cir., 1947, 162 F.2d 844.

8. The strong sense of misrepresentation is indicated in Bothwell v. Commissioner and Alamo National Bank v. Commissioner, supra, note 7, both frequently cited in the remaining cases referred to in note 7, supra. They are thus substantively distinguishable from cases like Helvering v. Schine Chain Theatres, Inc., and Bennet v. Helvering, supra, note 6, where such inference was not made: See the discussion in the latter two cases. Insofar as reliance is placed on refund

cases, see 10A Mertens, Law of Federal Income Taxation (1948) Section 60.11.

9. As in Bothwell v. Commissioner and Commissioner v. Timken, supra, note 7.

10. As in Wichita Coca Cola Bottling Co. v. United States, supra, note 7.

11. As in Alamo National Bank v. Commissioner, supra, note 7; Continental Oil Co. v. Jones, 10 Cir., 1949, 177 F.2d 508, certiorari denied 339 U.S. 931, 70 S.Ct. 666.

12. Compare Joyce v. Gentsch, supra, note 6, with Commissioner v. Timken, supra, note 7, decided in the same Court of Appeals on the same day; Helvering v. Schine Chain Theatres, Inc., supra, note 6; Ross v. Commissioner, supra, note 6, 169 F.2d at page 495; Commissioner v. Saltonstall, supra, note 6, 124 F.2d at pages 112–113, distinguishing Crane v. Commissioner, 1 Cir., 1934, 68 F.2d 640; Pancoast Hotel Co. v. Commissioner, supra, note 6, 2 T.C. at page 368; see also, Continental Oil Co. v. Jones, supra, note 11, 177 F.2d at page 512.

dollar amounts can readily be determined, have been stipulated by the parties."[13] Since the Tax Court held that the reorganization was taxable, it found the basis of the Pullman stock to be $82.0625 per share, the market value of that stock on the date of the distribution according to the stipulation of the parties. In this state of the record, we should not be inclined to review the Commissioner's contention. Helvering v. Salvage, 1936, 297 U.S. 106, 109, 56 S.Ct. 375, 80 L.Ed. 511; and compare Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. In any event, we would not accept the Commissioner's conclusion as the applicable rule of law on the merits. McCullough v. Commissioner, 2 Cir., 1946, 153 F.2d 345, 347; Countway v. Commissioner, 1 Cir., 1942, 127 F.2d 69, 75; Commissioner v. American Light & Traction Co., 7 Cir., 1942, 125 F.2d 365; Helvering v. Williams, 8 Cir., 1938, 97 F.2d 810. Since estoppel is not a part of the Commissioner's argument on this score, plainly the Pullman stock was not acquired by gift, but in a taxable exchange, and its "cost"[14] was properly fixed by the Tax Court on well-settled principles.[15]

For the reasons stated, the decisions of the Tax Court will be affirmed.

---

13. Notes of the hearing before the Tax Court, page 8.

14. Section 113(a) of the Internal Revenue Code, 26 U.S.C.A. § 113(a), states the general rule, that the basis of property shall be the cost of such property.

15. Budd International Corp. v. Commissioner, 3 Cir., 1943, 143 F.2d 784, 791, certiorari denied 323 U.S. 802, 65 S.Ct. 562, 89 L.Ed. 640; Hazeltine Corp. v. Commissioner, 3 Cir., 1937, 89 F.2d 513, 518. The basis of the gift-acquired Standard stock in the hands of taxpayers would, of course, be relevant to the determination of gain or loss resulting from the taxable exchange which occurred in 1930, but the consideration for the Pullman stock cannot be the basis of the Standard stock in the hands of the taxpayers since it bears no relation to the values upon which the taxable exchange was made. 3

Mertens, Law of Federal Income Taxation (1942) Section 21.16.

It should be noted that cash, as well as the Pullman stock, was received in exchange for the Standard stock, and that the cash was taxed. The Commissioner has never contended in this litigation that the fair market value of the Standard stock on the date of the exchange did not coincide with the fair market value of the Pullman stock on that date plus the cash. We are not, therefore, here concerned with the question, whether it is the value of that given or the value of that received which is the "cost" of the property acquired. See Estate of Myers v. Commissioner, 1 T.C. 100 (1942), majority and concurring opinions; Greenbaum, The Basis of Property shall be the Cost of Such Property: How is Cost Defined?, 3 Tax L.Rev. 351 (1948).