OPINION. HaRron, Judge: The only issue raised originally by the petitioner in its petition is whether petitioner is entitled to relief from excess profits tax under section 722. The petitioner filed its petition on September 17, 1948. On March 28, 1949, the Supreme Court entered its decision in National Carbide Corp. v. Commissioner, 336 U. S. 422. Thereafter, the petitioner filed a motion for leave to amend its petition to raise a standard issue. The petitioner’s motion was denied by this Court on the ground that it was not timely made and because this Court considered that it did not have jurisdiction. See Mutual Lumber Co., 16 T. C. 370. The petitioner appealed from the order of this Court denying its motion to amend the petition. The Court of Appeals for the Sixth Circuit remanded the proceeding with directions to grant the petitioner’s motion. City Machine & Tool Co. v. Commissioner, 194 F. 2d 535. In compliance with the mandate of the Court of Appeals for the Sixth Circuit, we granted a motion of the petitioner to separate the standard issue from the 722 issue. The standard issue now before us is whether, under the decision of the Supreme Court in National Carbide Corp. v. Commissioner, supra, the petitioner had taxable net income during each of the base period years (1936-1939) so as to be entitled to compute its excess profits credit, based on such income, under section 713 (f) of the Code. The facts are not in dispute. The petitioner, a wholly owned subsidiary of The City Auto Stamping Company was inactive prior to October 1936. The parent company was engaged in two principal business activities; it manufactured sheet metal stampings in a plant located on the outskirts of Toledo, and it operated a jobbing die business in leased premises in the Toledo Factories Building. In October 1936, the parent company leased the jobbing die business to the petitioner. The lease agreement provided for the payment of rental by the petitioner in an amount equal to all the net income and profits of the business after the payment of operating charges. Petitioner operated the jobbing die business under the lease agreement for the remainder of the base period years, and paid over to its parent, as rent, all of the operating net income of the business. The parent reported the income which it received from petitioner’s operations in its tax returns in each of the years 1936 to 1939, inclusive. The petitioner filed income tax returns for each of the years 1936 to 1939, inclusive, but did not report any gross or net income from its operations. Each return filed by petitioner disclosed a net loss of $25 representing a deduction for the payment by petitioner of its franchise tax. The petitioner’s 1936 return contained a notation advising the respondent of the lease agreement with its parent, and of petitioner’s treatment of the excess of its sales over its costs as rental expense. In April 1940, the lease agreement was canceled, and the die enterprise, including all the assets employed in the business, was transferred to the petitioner in exchange for additional shares of petitioner’s capital stock. A consolidated excess profits tax return filed by the parent for 1940 reflected petitioner’s operations for that year. For each of the years 1941 through 1944, petitioner filed an excess profits tax return in which it computed its excess profit's credit on the invested capital method. The petitioner now contends that it acted under an erroneous interpretation of the law both in failing to report and to pay tax on the income which it earned during the base period years, and in assuming, for excess profits tax purposes, that its exces profits credit based on income was zero. Petitioner argues that, under the decision of the Supreme Court in National Carbide Corp. v. Commissioner, supra, the lease agreement between petitioner and its parent must be considered as having had no validity for tax purposes, in which event, petitioner had taxable net income during the base period years, which entitles petitioner to compute its excess profits credit under the income method, since its credit thus computed would be greater than its credit based on invested capital. Petitioner concedes in its argument that it is taking an inconsistent position with respect to an item or transaction affecting the computation of its excess profits credit, and that, if petitioner prevails, adjustments under section 734 of the Code will be necessary. The respondent does not seriously contest the petitioner’s argument, but pleads in defense that the petitioner is estopped to disclaim the validity for tax purposes of the lease arrangement with its parent, and to assert now that it had taxable net income during the base period years which entitled it to an excess profits credit based on income. We will consider first the petitioner’s contention which is based upon the decision of the Supreme Court in the National Carbide Corporation case, supra. We agree with the petitioner that its tax treatment of the income which was earned by it during the base period years was erroneous as a matter of law. In National Carbide Corp. v. Commissioner, supra, the Supreme Court held that wholly owned subsidiary corporations, which were utilized by the parent for busines purposes, as operating companies, were taxable on the income which was earned by them. In its opinion the Supreme Court observed (p. 429) that we have held that a corporation formed or operated for business purposes must share the tax burden despite substantial identity, in practical operation, with its owner. Complete ownership of the corporation, and the control primarily dependent upon such ownership — the important ingredients of the Southern Pacific case — are no longer of significance in determining taxability. Moline Properties, Inc., v. Commissioner, supra; Burnet v. Commonwealth Improvement Co., 287 U. S. 415 (1932) * * * The fact that the parent corporation retains direction of the affairs of the subsidiary, provides the subsidiary with all of its assets, and treats all the profits of the subsidiary as its own does not alter the tax consequences. It is now well settled that “the tax laws require taxation of the corporate entity if it engages in ‘business activity’.” Moline Properties, Inc. v. Commissioner, 319 U. S. 436; National Carbide Corporation, supra. The only possible exceptions to the stated rule are where there is • a true corporate agent or trustee. National Carbide Corporation, supra. Neither of those relationships are present here. It is not disputed that the petitioner was engaged in business activity in .each of the base period years, nor is it contended that petitioner corporation was “a sham or unreal” under the doctrine of Higgins v. Smith, 308 U. S. 473. Therefore, we do not have in this case the problem referred to in the twentieth footnote to the opinion of the Supreme Court in the National Carbide Corporation case, supra. Petitioner was utilized by its parent as an operating company, as were the subsidiaries in the National Carbide Corporation case, supra. The fact that the parent-subsidiary arrangement in the instant case was called a lease, while in the National Carbide Corporation case, supra, it was called a sales contract and the subsidiaries were referred to as agents of the parent, is not, in our opinion, a material difference. The form employed by the parent in utilizing the subsidiary for business purposes cannot control the tax consequences. National Carbide Corporation, supra. We conclude that a proper treatment of the income earned by the petitioner in each of the base period years would require that the income be taxed to the petitioner. It follows that petitioner had taxable net income in each of the base period years. We turn next to consideration of whether, as respondent contends, the petitioner is now estopped to assert a position which is inconsistent with its tax treatment of income in the base period years. We have discussed the question of estoppel at some length in Tide Water Oil Co., 29 B. T. A. 1208, 1220; Sugar Creek Coal & Mining Co., 31 B. T. A. 344, 346; and American Light & Traction Co., 42 B. T. A. 1121, 1122, affd. 125 F. 2d 365. No useful purpose would be served by repetition here. The respondent seeks to invoke either an estoppel in pais, or a doctrine analogous to estoppel. He argues that the essential element's of a technical estoppel are present in this case, and that, in any event, the petitioner should be barred now from disclaiming the validity for tax purposes of the lease agreement which it entered into with its parent. We think the respondent’s argument is without merit. There is ho basis in the record before us to support a plea of estoppel in any of its variations. There was no misrepresentation or concealment of material facts on the part of petitioner, nor was the respondent induced to change his position to his detriment in reliance on any representations by the petitioner. Respondent was not ignorant of the true facts. He had knowledge of the lease arrangement between petitioner and its parent at an early date. Petitioner’s return for 1936, the first taxable period during which the lease was in effect, disclosed the existence of the lease agreement, and advised the respondent of the petitioner’s proposed treatment, under the terms of the lease, of the excess of its sales over its costs as rental expense. The return also contained the notation that “for convenience in accounting and reporting taxable income, all of the operating accounts of The City Machine and Tool Company have been consolidated with those of The City Auto Stamping Company.” The income tax return of The City Auto Stamping Company for 1936 was examined by the respondent and accepted as filed; its returns for the years 1937 to 1940, inclusive, were also examined by revenue agents and no adjustments were made on account of the lease arrangement between petitioner and its parent. The only fair inference to be drawn from the facts is that the petitioner, by taking an erroneous legal position, filed incorrect tax returns in each -of the base period years, and that the respondent acquiesced in the error. The mistake made was one of law, and “neither the taxpayer nor the Commissioner is estopped by the previous taking of an erroneous legal position.” Commissioner v. American Light & Traction Co., 125 F. 2d 365, and cases therein cited. See, also, Commissioner v. Mellon, 184 F. 2d 157, affirming 12 T. C. 90; Tide Water Oil Co., supra; Mahlon D. Thatcher, 46 B. T. A. 869; Estate of Isadore L. Myers, 1 T. C. 100. Capital National Bank of Sacramento, 16 T. C. 1202. We conclude that the petitioner is not estopped here. There is a further reason why the doctrine of estoppel may not be invoked here. Congress in enacting the excess profits tax contemplated situations in which either the taxpayer or the Commissioner might take an inconsistent position with respect to an item or transaction affecting the taxpayer’s excess profits credit. Section 734 authorizes adjustments in certain cases where- the treatment of an item or transaction for excess profits tax purposes is inconsistent with a prior erroneous treatment for income tax purposes, and the correction of the error is prevented by some provision or rule of law such as the statute of limitations. See S. Kept. No. 1631, 77th Cong., 1st Sess. (1942), p. 211. “Section 734 is an equitable provision designed not to prevent inconsistency but to discourage such inconsistency by depriving the guilty party of any pecuniary benefit therefrom.” S. Kept. No. 1631, sufra. The Commissioner in the situation here presented is not without his remedies. It is held that the petitioner had taxable net income in each of the base period years, and that it is entitled to compute its excess profits credit based on such income. In view of our conclusions under the standard issue, it is not necessary to consider the issues relating to relief under section 722. Petitioner concedes that its excess profits credit based on income will approximate the constructive average base period net income which it alleges in its petition for relief under section 722. See Irwin B. Schwabe Co., 12 T. C. 606. The petitioner concedes that adjustments, resulting from its taking an inconsistent position with respect to an item or transaction affecting its excess profits credit, will be necessary under section 734 of the Code. Therefore, recomputation under Rule 50 is necessary. Decision will be entered under Rule 50.